OPINION
{¶ 1} Defendant-appellant, Carson Eldrige, appeals his conviction for aggravated assault in the Brown County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} This appeal involves a scenario wherein a man (appellant) walks into a bedroom and reacts violently upon discovering his lover in bed with another man. In June 1996, the Brown County Grand Jury indicted appellant for one count of attempted murder.[1] However, much of the testimony at trial was directed at obtaining or preventing a jury instruction for aggravated assault, based on the mitigating factor that appellant acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite appellant into using deadly force.
 {¶ 3} The evidence in the state's case-in-chief established that appellant met one Cheryl Ann McCann some six months before the June 3, 1996 events giving rise to appellant's indictment. The relationship quickly became sexual in nature. During this time, McCann lived in the Hyde Park Apartment complex located in Mt. Orab.
 {¶ 4} McCann characterized her relationship with appellant as somewhat casual, amounting to "drinking partners, more or less." The cross-examination of McCann concentrated on emphasizing their contacts, covering such things as the frequency of appellant's overnight stays, shared activities and financial assistance appellant provided to McCann.
 {¶ 5} By all accounts, appellant was not in contact with McCann during the week leading up to June 3, 1996. McCann interpreted appellant's absence to mean their relationship was over.
 {¶ 6} At about 4:00 a.m. on June 3, 1996, appellant entered McCann's apartment unannounced and, upon walking into the bedroom, discovered, much to his surprise, McCann in bed with another man, one Danny Brown. McCann and Brown had an on and off sexual relationship for some eight years prior to June 1996.
 {¶ 7} At the sight of McCann and Brown together, appellant immediately ran into the kitchen and retrieved a ten-inch butcher knife. Appellant ran back into the bedroom, where he stabbed Brown in the back of the head. The two struggled out of the bedroom, down a short hallway, and into the living room. During the fray, appellant was heard to say to Brown, "I'm going to cut your fucking heart out!"
 {¶ 8} Once in the living room, appellant stabbed Brown in the chest before Brown claimed to dislodge the knife from appellant's hand by jamming it into the carpet.
 {¶ 9} Photos of Brown's injuries showed a significant amount of blood loss. An ambulance squad transported him to Brown County General Hospital for treatment. Brown suffered a rear scalp wound approximately ten centimeters (four inches) in length, requiring eight staples to close. Brown also suffered a puncture wound in his left chest area extending laterally around the chest wall approximately 10 to 12 centimeters (4 to 4 inches), requiring six sutures to close. The puncture was such that as doctors irrigated the wound from the front with cleansing solutions, Brown could feel associated pain towards his back. The knife apparently missed all vital organs. Brown still had visible scars as of the April 22, 2003 trial.
 {¶ 10} Later in the morning of June 3, 1996, police found appellant sleeping in another apartment in the same complex and arrested him. In a written statement, appellant revealed, "I was at a party — I've been drink [sic] doing cocaine and L.S.D. and I found Danny Brown in the bed naked with my so called old lady. I just lost it." In answer to police follow-up questions, appellant stated he was angry upon seeing Brown and McCann in bed together.
 {¶ 11} At the close of the state's case-in-chief and outside the presence of the jury, appellant inquired whether the trial court would give a jury instruction for aggravated assault. A review of the entire record suggests the strategy behind the request was to determine whether it would be necessary for appellant to testify in order to get this instruction to the jury. The trial court indicated it would consider the request while appellant's counsel questioned the first two defense witnesses.
 {¶ 12} Appellant's first two witnesses, a co-worker and a sister, testified to matters associated with the depth of appellant's involvement with McCann. Appellant thereafter again requested the trial court grant a jury instruction for aggravated assault. The trial court declined, ruling the evidence so far showed the stabbing occurred out of an alcohol-induced stupor rather than rage.
 {¶ 13} Appellant then took the stand Appellant described a deeper involvement with McCann, saying he loved her and characterizing her as a best friend and a partner. He described his feelings upon seeing McCann and Brown in bed together, saying it was like he lost his best friend and he just went "berserk."
 {¶ 14} During his direct examination, appellant also stated, "I would never have done nothing [sic] like that. I've never done nothing [sic] like that." On cross-examination, over appellant's objection, the prosecutor inquired into appellant's three prior misdemeanor assault convictions as well as Georgia convictions for misdemeanor terrorist threats and felony obstructing police.
 {¶ 15} At the conclusion of all the testimony, the trial court granted appellant's request and instructed the jury on aggravated assault. After deliberations, the jury found appellant not guilty of attempted murder and guilty of aggravated assault.
 {¶ 16} After receiving a presentence investigation report, the trial court found appellant caused serious physical harm and had prior convictions for assault, an offense of violence by statutory definition. The trial court sentenced appellant to an indefinite term of not less than 30 months nor more than five years in prison.[2] From this conviction, appellant appeals and raises two assignments of error.
 Assignment of Error No. 1 {¶ 17} "The trial court errored [SIC] when it allowed the state to use misdemeanor convictions over the objection of the defendant, after the court indicated that it was not giving a jury instruction on a lesser included offense, to wit: aggravated assault.
 Assignment of Error No. 2 {¶ 18} "The court's failure to believe testimony and evidence that the defendant became enraged appeared in the plaintiff's case [SIC] was error and caused the defense to have to call the defendant to testify."
 {¶ 19} Since the second assignment of error describes events occurring first in time and is also an aspect of the first assignment of error, we will consider appellant's second assignment of error initially. We interpret the second assignment of error to focus on the trial court's failure to find that the evidence prior to appellant's testimony supported a jury instruction for the lesser offense of aggravated assault.
 {¶ 20} In Ohio, there are three groups of lesser offenses on which the jury must be instructed when supported by the evidence at trial: (1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; and (3) lesser included offenses. State v. Deem (1988), 40 Ohio St.3d 205, paragraph one of the syllabus. A jury instruction on the lesser offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser offense. State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
 {¶ 21} The first type of lesser offense, an attempt to commit the charged offense, obviously does not apply here since the charged offense was attempted murder, and it is legally impossible to attempt to attempt to engage in criminal conduct. See SEO v. Austintown Township (1998),131 Ohio App.3d 521, 528. The second type of lesser offense, inferior degrees of the indicted offense, occur where the elements of the lesser offense are identical to or contained within the indicted offense, except for one or more additional mitigating elements in the lesser offense.Deem, paragraph two of the syllabus. The third type of lesser offense, lesser included offenses, occurs where (1) the lesser offense carries a lesser penalty than the greater offense, (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. Deem, paragraph three of the syllabus.
 {¶ 22} We first note that the offense for which appellant was convicted, aggravated assault, is considered an offense of inferior degree to the crime of felonious assault. State v. Mack, 82 Ohio St.3d 198,200, 1996-Ohio-375, State v. Kehoe (1999), 133 Ohio App.3d 591, 610. This is because the elements of each offense are identical, except for aggravated assault's additional mitigating element that the defendant acted while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force. R.C. 2903.12(A).
 {¶ 23} However, the Ohio Supreme Court has ruled that felonious assault is not a lesser included offense to attempted murder, ending a division among appellate courts on this issue. State v. Barnes,94 Ohio St.3d 21, 26, 2002-Ohio-68. The court observed that it isstatutorily possible to commit the offense of attempted murder without necessarily committing the offense of felonious assault. The testimony presented in a particular case is irrelevant for resolution of this issue. Id.
 {¶ 24} Since the elements of aggravated assault are identical to the elements of felonious assault save the additional mitigating element, it follows from Barnes that aggravated assault is also not a lesser included offense to attempted murder. Additionally, aggravated assault is clearly neither an offense of inferior degree nor an attempt to commit the charged offense of attempted murder.
 {¶ 25} Because aggravated assault falls under none of the three groups of lesser offenses warranting a jury instruction, appellant was never entitled to receive this instruction at all in a trial involving a one-count indictment for attempted murder. That appellant may have nevertheless received the instruction after appellant testified rather than before is therefore of no consequence.[3] Accordingly, appellant's second assignment of error is overruled.
 {¶ 26} In his first assignment of error, appellant contends the trial court erred in allowing the prosecutor to impeach his testimony with evidence of prior misdemeanor convictions for assault, terrorist threats, in addition to felony obstructing police. The state counters that appellant's own testimony on direct examination opened the door for this type of impeachment.
 {¶ 27} On direct examination, appellant described entering McCann's apartment bedroom and discovering McCann in bed with Brown, the victim. Appellant testified, "I just exploded" and that "I'd never been that way before." Shortly later in the direct examination, appellant related the following:
 {¶ 28} Q. [By counsel for appellant]: "How did that make you feel when you saw that?
 {¶ 29} A. "It just hurt, I mean I took care of the kids and I tried to do all I could. It just hurt my heart. I just lost it. It still bothers me today to think about it, because we was doing [sic] so good.
 {¶ 30} Q. "Now when you say you lost it, what does that mean?
 {¶ 31} A. "Just like I went berserk or something. I can't really describe it. I've never felt that way before.
 {¶ 32} Q. "Can you try and explain it?
 {¶ 33} A. "It was like I lost my best friend and everything. Just like somebody took them away from me, you know, that's what I was thinking.
 {¶ 34} Q. "Did it affect your ability to think?
 {¶ 35} A. "Yes, sir.
 {¶ 36} Q. "And how did it affect your ability to think?
 {¶ 37} A. "Well, I guess I wasn't thinking.
 {¶ 38} Q. "Did it affect your ability to control yourself?
 {¶ 39} A. "Yeah. Because I would never have done nothing [sic] likethat. I've never done nothing [sic] like that." (Emphasis added.)
 {¶ 40} On cross-examination, over appellant's objection, the prosecutor inquired if appellant had three prior misdemeanor convictions for assault in addition to a Georgia misdemeanor conviction for terrorist threats and a Georgia felony conviction for obstructing police.
 {¶ 41} At the outset, we observe that the prosecution may not initiate questioning to establish a criminal defendant's propensity for violence in a trial for violent offenses such as attempted murder. Evid.R. 404(A). However, a defendant may introduce testimony, through himself or others, of a relevant character trait that would tend to prove he acted in conformity therewith on a particular occasion. Evid.R. 404(A)(1). In a trial involving a violent offense, that character trait is typically for peacefulness.
 {¶ 42} By introducing this evidence, the defendant "opens the door" for the prosecution, which is then permitted to rebut or impeach this character evidence on cross-examination. Evid.R. 405(A). The cross-examination may include inquiry into relevant specific instances of conduct. Id.
 {¶ 43} Sometimes these specific instances of conduct can involve relevant prior criminal convictions. In this situation, the prosecution is not limited only to the type of convictions described in Evid.R. 609.[4] This is because the evidence is not offered for the purposes described in that rule, namely, for attacking the general credibility of the witness. Rather, the evidence is to rebut the character evidence initially presented by the defense.
 {¶ 44} The rebuttal can cover any relevant convictions, including misdemeanors otherwise inadmissible under Evid.R. 609, but subject to the other applicable rules of evidence. See State v. King (Aug. 30, 1995), Summit App. No. 16921. Indeed, the rebuttal evidence can consist of misdeeds less serious than misdemeanor convictions in the proper circumstances. See State v. Gest (1995), 108 Ohio App.3d 248, 258
(evidence of defendant's prior arrests where defendant denied having any prior arrests on direct examination); State v. Robinson (1994),98 Ohio App.3d 560 (evidence of prior juvenile court adjudications where defendant introduced evidence of his peaceful character on direct examination); State v. Jones (Feb. 10, 1992), Stark App. No. CA-8680 (evidence of prior marijuana smoking where appellant denied usage and asserted he was a good parent on direct examination).
 {¶ 45} The Ohio Rules of Evidence make no distinction between situations in which the defendant introduces character evidence through himself as opposed to through a defense witness. In other words, if the defendant testifies as to his own good charcter trait, he is subject to rebuttal in the same manner as any other witness. See State v. King
(Aug. 30, 1995), Summit App. No. 16921.
 {¶ 46} The scope of the prosecution's rebuttal is not unlimited. For example, it is subject to relevancy restrictions pursuant to Evid.R. 402. In this context, relevancy will be tied to the nature of the character evidence introduced by the defendant. By way of illustration, the prosecution cannot typically impeach a defendant's character evidence for peacefulness with a criminal conviction for nonsupport of dependents. The prosecution's admissible rebuttal evidence is further subject to exclusion under Evid.R. 403 if its probative value is substantially outweighed by dangers of unfair prejudice, confusion of issues, misleading of the jury, undue delay, or needless presentation of cumulative evidence.
 {¶ 47} In the case sub judice, appellant challenges the trial court's ruling that appellant's direct examination touched on character evidence of peacefulness and, thus, "opened the door" for rebuttal by the prosecution. Rather, appellant contends his testimony that "I would never have done nothing [sic] like that" and that "I've never done nothing [sic] like that" simply meant that appellant never went "berserk" like that before. In the alternative, appellant submits it might also be interpreted as never having stabbed someone with a knife before. Appellant argues that under either interpretation, the prior misdemeanors used in the prosecution's rebuttal were "not in the same league" with appellant's testimony or the attempted murder charge, which is another way of saying the rebuttal evidence was irrelevant or, at the least, unduly prejudicial.
 {¶ 48} A trial court is vested with broad discretion regarding decisions to admit or exclude relevant evidence in a trial. State v.Myers, 97 Ohio St.3d 335, 351, 2002-Ohio-6658. A reviewing court will not reverse a trial court's decision on the admission or exclusion of evidence absent an abuse of discretion. State v. Sage (1987),31 Ohio St.3d 173, 180. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 49} Based upon a careful review of the transcript, we do not believe the trial court abused its discretion in allowing the rebuttal evidence by the prosecution. While it is certainly possible that appellant's testimony on direct examination meant only that he had never before gone that "berserk" or had never before stabbed anyone with a knife, those are not the only possible interpretations. It is also possible to conclude that by testifying that he "had never done nothing [sic] like that," appellant meant to act out in a violent way. Appellant never further explained or qualified his comments in the remainder of the direct examination. We do not find the trial court abused its discretion in its decision that this testimony permitted the prosecution's rebuttal.
 {¶ 50} Appellant also argues that use of his misdemeanor convictions for impeachment purposes are forbidden under Evid.R. 609. However, as previously noted, the mere fact that the prior convictions are misdemeanors outside the scope of Evid.R. 609 is immaterial. Evid.R. 609 is concerned with attacking the general credibility of witnesses. This rebuttal did not impeach appellant's general credibility, but rather directly contradicted his character trait testimony pursuant to Evid.R. 404(A)(1) and 405(A).
 {¶ 51} Finally, we find that even if the trial court's decision could be construed as error, the error was harmless. Early in appellant's direct examination, and prior to any cross-examination by the prosecution, appellant volunteered many of the same offenses later used in the prosecution's rebuttal.
 {¶ 52} Q. [By counsel for appellant]: "Sir, you've had some prior contact with the criminal justice system?
 {¶ 53} A. "Yes, sir.
 {¶ 54} Q. "Specifically, I think you had something in 1993 and that would have been the last thing?
 {¶ 55} A. "Yes, sir.
 {¶ 56} Q. "What was that?
 {¶ 57} A. "Uh, they charged me with obstruction and simple battery and interference with government property or * * *.
 {¶ 58} Q. "And what is the interference with government property?
 {¶ 59} A. "I kicked a car and I guess I might've put a little dent in it or something.
 {¶ 60} Q. "And the obstruction, what was that?
 {¶ 61} A. "I kinda yanked away from them when they was [sic] trying to handcuff me."
 {¶ 62} This testimony by appellant diluted somewhat the effect of the prosecution's subsequent rebuttal. Further, after the prosecution's cross-examination, appellant was permitted to explain that saying, "I'm going to whip your ass" in Georgia constitutes the criminal offense of "terrorist threats."
 {¶ 63} We also observe that a review of the entire record shows appellant's trial strategy was to establish the provocation element so as to win an aggravated assault verdict. Appellant never denied stabbing Brown and never asserted self-defense. Despite no legal entitlement to an aggravated assault jury instruction, appellant nevertheless received it at his request, and the jury ultimately returned an aggravated assault verdict. Therefore, appellant was not prejudiced by the trial court's evidentiary ruling. See State v. Brown 65 Ohio St.3d 483, 485,1992-Ohio-61. Accordingly, appellant's first assignment of error is overruled.
Judgment affirmed.
Valen, P.J., and Young, J., concur.
[1] The trial in this matter did not occur until April 22, 2003. In the intervening time, appellant was at large with a warrant for his arrest.
[2] Because the crime occurred prior the July 1, 1996 effective date of S.B. 2 and S.B. 269, the trial court sentenced appellant under the "old" law. State ex rel. Lemmon v. Ohio Adult parole Authority,78 Ohio St.3d 186, 1997-Ohio-223.
[3] Further, appellant may not now claim the trial court erred in granting his request for a jury instruction of aggravated assault since, under the invited-error doctrine, appellant cannot take advantage of error he himself induced the trial court to make. State ex rel. Beaverv. Konteh, 83 Ohio St.3d 519, 1998-Ohio-295.
[4] Evid.R. 609 limits impeachment by evidence of conviction of a crime to (1) crimes punishable by death or imprisonment in excess of one year, or (2) crimes involving dishonesty or false statement, regardless of the punishment.