[Cite as *State v. Davis*, 195 Ohio App.3d 123, 2011-Ohio-2387.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 91324**

## THE STATE OF OHIO,

APPELLEE,

v.

## DAVIS,

APPELLANT,

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-500668

**BEFORE:** Sweeney, J., Stewart, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** May 19, 2011

William D. Mason, Cuyahoga County Prosecuting Attorney, and Brent C. Kirvel and T. Allan Regas, Assistant Prosecuting Attorneys, for appellee.

John F. Corrigan; and Timothy Young, Ohio Public Defender, and Katherine A. Szudy, Assistant Public Defender, for appellant.

JAMES J. SWEENEY, Judge.

{¶ 1} This appeal is before this court on remand from the Ohio Supreme Court, after it reversed our determination that the failure of a trial court to instruct a spouse on competency and make a finding on the record that the spouse voluntarily chose to testify constitutes reversible plain error. *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, reversing *State v. Davis*, Cuyahoga App. No. 91324, 2009-Ohio-5217.

{¶ 2} We based our determination in our previous opinion on *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, which held the following: "Once it has been determined that a witness is married to the defendant, the trial court must instruct the witness on spousal competency and make a finding on the record that he or she voluntarily chose to testify. Failure to do so constitutes reversible plain error."

{¶ 3} In reversing our determination in the instant case, the Ohio Supreme Court stated, "Admittedly, our statement in *Brown* that a violation of Evid.R. 601(B) 'constitutes reversible plain error' may have been misunderstood to mean that the admission of incompetent spousal testimony is structural error requiring automatic reversal without consideration of whether the testimony prejudiced the accused." *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 21.

{¶ 4} The court clarified its statement and held the following: "An appellate court may not reverse a conviction for plain error based on the admission of spousal testimony in violation of Evid.R. 601(B) unless it conducts a plain-error analysis * * * and determines that but for the error in admitting the spouse's testimony, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice." Id. at ¶ 26.

{¶ 5} The Ohio Supreme Court instructed this court on remand to "conduct a plain-error analysis and determine that but for the error in admitting spousal testimony, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice." Id. at ¶ 29.

{¶ 6} In our previous opinion, we overruled defendant William Davis's first assignment of error, reversed his convictions, and remanded this case for a new trial based on the reasoning discussed above. *State v. Davis*, Cuyahoga App. No. 91324, 2009-Ohio-5217. A brief procedural history of this case follows.

{¶ 7} On September 17, 2007, defendant was charged with 31 counts of rape and gross sexual imposition, involving his two nieces, D.T.1 and D.T.2. According to D.T.1, defendant sexually molested her from 1999, when she was nine years old, until 2005, when she was 15 years old. According to D.T.2, defendant began to molest her in 2006, when she was eight or nine years old.

{¶ 8} In the fall of 2006, D.T.1 told her mother that defendant had sexually abused her for six years. A subsequent investigation of these allegations led to defendant's

indictment. On March 7, 2008, a jury found defendant guilty of six counts of rape of a child under 13 years of age in violation of R.C. 2907.02(A)(1)(b), 13 counts of rape by force in violation of R.C. 2907.02(A)(2), one count of gross sexual imposition by force in violation of R.C. 2907.05(A)(1), and three counts of gross sexual imposition of a child under 13 years of age in violation of R.C. 2907.05(A)(4). On March 12, 2008, the court sentenced defendant to life in prison.

{¶ 9} We begin by analyzing the spousal testimony for plain error, as directed by the Ohio Supreme Court.

{¶ 10} After reviewing the facts of this case, we find that the outcome of the trial would have been the same regardless of the error in admitting defendant's wife's testimony. Reversal is not necessary to prevent a manifest miscarriage of justice, because defendant's multiple rape and gross sexual imposition convictions are supported by the testimony of the two victims. See *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854 ("There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction").

{¶ 11} The two victims, D.T.1 and D.T.2, who are defendant's wife's nieces, testified that defendant repeatedly molested them. Most of the abuse occurred at defendant's home when the girls were visiting and helping his wife on the weekends. Defendant's wife has trouble getting around, and defendant would take advantage of this by sexually abusing the girls when his wife was sleeping or occupied elsewhere in the house.

{¶ 12} D.T.1 testified that the abuse started in 1999, when she was nine years old. D.T.1 detailed multiple incidents of sexual abuse that happened at four different houses that defendant and his wife lived in over a six year span. The last time D.T.1 recalled defendant raping her was late in 2005, when she was 15 years old.

{¶ 13} D.T.1 recalled various details of the abuse. For example, after it first started, there was blood in her underwear. D.T.1 showed her mom, who thought that D.T.1 had begun to menstruate. Most of the abuse occurred at night, when D.T.1 was sleeping in a makeshift bed on the dining room floor. D.T.1 testified that she told defendant several times that she "did not want to do this anymore" but that he continued to rape her, saying that "it will be over soon." D.T.1 had trouble sleeping and frequently cried.

{¶ 14} D.T.2 testified that defendant touched her inappropriately in 2006, when she was eight or nine years old. This happened on two occasions when D.T.2 was staying at her aunt and defendant's house for the weekend, while she was sleeping on blankets on the dining room floor.

{¶ 15} In September 2006, D.T.1 told her mother about the abuse, and her mother contacted the police. Cuyahoga County Department of Children and Family Services conducted an investigation, and defendant was subsequently indicted for the offenses.

{¶ 16} In light of D.T.1's and D.T.2's specific and consistent testimony regarding defendant's molesting them, we cannot say that defendant would have been acquitted had his wife not testified. The court's failure to inform defendant's wife that she could

choose not to testify against her husband and failure to find that she voluntarily elected to testify were not prejudicial to defendant.

{¶ 17} Given this determination, we turn to defendant's assignments of error on appeal. In our previous opinion, we overruled defendant's first assignment of error,[1] and we hereby incorporate that analysis into this opinion. 2009-Ohio-5217, ¶ 13-27. Additionally, our previous opinion rendered defendant's second and third assignments of error moot. Id., at ¶ 31. However, our determination that defendant's convictions should not be reversed for plain error based on the admission of spousal testimony necessitates that we now review these remaining assignments of error.

{¶ 18} Defendant's second assignment of error states as follows:

{¶ 19} "The appellant was denied a fair trial when evidence was admitted that appellant had a general propensity to molest young females when he was on trial for rape and GSI of two of his nieces."

{¶ 20} Evid.R. 404(B) states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See also R.C. 2945.59.

---

[1]Defendant's first assignment of error: "The defendant was twice put in jeopardy for the same offenses contrary to the Fifth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution when after jeopardy having attached the court denied appellant's request to try his case to a jury of eleven, dismissed the sworn panel, and impanelled a second jury."

{¶ 21} On January 18, 2008, the court denied the state's pretrial motion to allow Evid.R. 404(B) other-acts evidence into trial, specifically, the testimony of the victims' mother, who is also defendant's sister-in-law, regarding comments that defendant made to young female family members approximately 20 years ago. In ruling the evidence inadmissible, the court stated, "[T]he testimony would go to the act itself rather than the plan to engage in the act. This is not needed as evidence of modus operandi to establish identity. It's impossible to defend against, as well as being highly prejudicial."

{¶ 22} During trial, the victims' mother testified for the state, and the prosecutor asked her if she ever had a falling out with defendant. The victims' mother answered, "No." The state then asked, "Now, has your relationship always been wonderful with this defendant?" The victims' mother answered that it had. During cross-examination, defense counsel confirmed with the victims' mother that she never had any disagreements with defendant prior to this case, and that generally, "everyone in this family [was] getting along perfectly prior to these allegations coming to light." During redirect examination, the state probed the victims' mother's testimony of no family disagreements. Eventually, the victims' mother testified to the following:

{¶ 23} Approximately 16 years ago, she walked in on defendant, who was standing "right up on" her sister, who did not have anything on but a towel; defendant "always has been this type of person that if you — if you're at the sink washing dishes, he would come up behind you and act like he's getting something off the top, the cabinets up there, and he'd be rubbing and grinding on you and you be like, 'Move'"; when she was

14 years old, the victims' mother was walking from the store when defendant passed by in a car and said, "Look at those big titties.  I can suck them"; and, at a family function around Christmas time, defendant inappropriately kissed her on the lips, and she slapped him in the face.

{¶ 24} Defendant did not object to this line of testimony.  In fact, on recross-examination, defendant focused on the inconsistencies in the victims' mother's testimony, in that she initially said that she never had a disagreement with defendant but subsequently testified to improper incidents with defendant over the years.  Defense counsel asked how many times she slapped defendant and she responded, "More than once."  Defendant also elicited testimony from the victims' mother that he was drunk all the time and that she was one of the people that he had rubbed up against in the past.  Finally, defense counsel asked her why she kept quiet about defendant's history of sexually inappropriate conduct.  "Because [her sister; defendant's wife] would always say, '[defendant is] drunk. [Defendant is] drunk,' when he do things out of the ordinary.  So you try to just go on, he's drunk.  But some things you can't just go with that he's drunk."

{¶ 25} Since defendant failed to object to this testimony, he waived all but plain error on appeal.  Evid.R. 103(A).  Crim.R. 52(B) states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  The Ohio Supreme Court identified "three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial.

First, there must be an error, *i.e.*, a deviation from a legal rule.   Second, the error must be plain.   To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings.   Third, the error must have affected 'substantial rights.'   We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." (Citations omitted.) *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240.

{¶ 26} While defendant cites Evid.R. 404(B) for the proposition that evidence of past wrongs or acts "is not admissible to prove the character of a person in order to show action in conformity therewith," we need not discuss this because we find that the testimony falls under the Evid.R. 404(A)(1) exception to the inadmissibility of character evidence in general.   Evid.R. 404(A)(1) states that character evidence is admissible if "offered by an accused, or by the prosecution to rebut the same."   This court has held that error will not be found when the defense opens the door to otherwise inadmissible evidence.   *State v. Clemence*, Cuyahoga App. No. 81845, 2003-Ohio-3660, citing *State v. Greer* (1988), 39 Ohio St.3d 236, 530 N.E.2d 382.

{¶ 27} Looking at the proffered testimony in light of the above evidentiary rules and case law, we cannot say that it was a plain and obvious error to allow it.   Although the victims' mother testified for the state, she initially said that she had no problems with defendant.   Defense counsel expanded on this, possibly because it may have been favorable to him.   This opened the door for the state to present rebuttal testimony that the witness did, in fact, have problems with defendant.   Defense counsel then expanded

on this line of questioning, presumably to impeach the state's witness by pointing out her inconsistencies.

{¶ 28} "[A] criminal defendant may not make an affirmative, apparently strategic decision at trial and then complain on appeal that the result of that decision constitutes reversible error." *State v. Doss*, Cuyahoga App. No. 84433, 2005-Ohio-775. Pursuant to the invited-error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced the court to make." *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27.

{¶ 29} Accordingly, defendant's second assignment of error is overruled.

{¶ 30} In defendant's third assignment of error, he argues as follows:

{¶ 31} "Appellant was prejudiced by ineffective assistance of counsel."

{¶ 32} To substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. In *State v. Bradley*, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if the defendant fails to prove the second prong of prejudicial effect. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.

{¶ 33} In the instant case, defendant argues that his trial counsel was ineffective in the following ways: (1) failing to object to inadmissible other-acts testimony and (2) failing to object to the state's calling his wife as a witness and questioning her about a letter D.T.1 wrote to her and calls between her and defendant when defendant was in jail.

{¶ 34} The other-acts testimony was thoroughly analyzed in defendant's second assignment of error. For the same reasons, we find that the admission of this evidence was defense counsel's trial strategy because it attacked the credibility of the state's witness. See Evid.R. 607 (allowing impeachment by prior inconsistent statements).

{¶ 35} Defendant's second allegation of ineffective assistance of counsel concerns his wife's testimony. Defendant argues that she was incompetent to testify under Evid.R. 601(B), which states as follows: "Every person is competent to be a witness except * * * [a] spouse testifying against the other spouse charged with a crime except when * * * (2) the testifying spouse elects to testify."

{¶ 36} As stated earlier in this opinion, the court failed to find that defendant's wife elected to testify. Furthermore, defense counsel did not object to defendant's wife's testimony. Defendant's wife was called to testify by the state, but she was declared a hostile witness on the stand under Evid.R. 611(C) and subjected to leading questions because her testimony was at times favorable to the state and at times favorable to defendant. However, assuming without deciding that counsel was ineffective for failing to object to defendant's wife's testimony, we turn to the second prong of *Strickland*, whether the result of the proceeding would have been different had counsel

objected.

{¶ 37} Under direction from the Ohio Supreme Court, we determined earlier in this opinion that the outcome of the trial would have been the same regardless of the error in admitting defendant's wife's testimony. Using the same reasoning, we likewise determine that the outcome of defendant's trial would have been the same regardless of counsel's failure to object to defendant's wife's testimony. See *State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831 ("The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness").

{¶ 38} Accordingly, defendant's third assignment of error is overruled, and his convictions are affirmed.

Judgment affirmed.


STEWART, P.J., concurs.

BOYLE, J., concurs in part and dissents in part.


BOYLE, J., concurring in part and dissenting in part:

{¶ 39} I respectfully dissent from the majority's resolution of the first assignment of error because the record fails to demonstrate a "manifest necessity" for sua sponte ordering a mistrial.

{¶ 40} At the outset, I must emphasize that the constitutional protection afforded under the Double Jeopardy Clause also "embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Arizona v. Washington* (1978), 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717, quoting *United States v. Jorn* (1971), 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed. 2d 543, and *Wade v. Hunter* (1949), 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974.

{¶ 41} And although a trial court has the power to sua sponte declare a mistrial without the defendant's consent, "the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez* (1824), 22 U.S. 579, 580 (the case wherein the United States Supreme Court initially used the phrase "manifest necessity"); *United States v. Toribio-Lugo* (C.A.1, 2004), 376 F.3d 33, 38-39. Indeed, recognizing that a constitutionally protected interest is affected by a court's sua sponte declaration of a mistrial, the Supreme Court has cautioned trial courts to exercise its authority only after a "scrupulous exercise of judicial discretion." *Jorn*, 400 U.S. at 485. As stated by the Supreme Court:

{¶ 42} "[A] trial judge, therefore, 'must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.'" *Washington*, 434 U.S. at 514, quoting *Jorn*, 400 U.S. at 486 (Harlan, J.).

{¶ 43} With these considerations in mind, the "manifest necessity" standard is a

heavy burden. *Washington*, 434 U.S. at 505. And although there is no precise, mechanical formula to determine whether a mistrial is supported by manifest necessity, a reviewing court must be satisfied that the trial court exercised "sound discretion" in declaring a mistrial. Id. at 506, 514; see also *Ross v. Petro* (C.A.6, 2008), 515 F.3d 653.

To exercise "sound discretion" in determining that a mistrial is necessary, "the trial judge should allow both parties to state their positions on the issue, consider their competing interests, and explore some reasonable alternatives before declaring a mistrial." *State v. Rodriguez*, 8th Dist. No. 88913, 2007-Ohio-6302, ¶23, citing *Washington.*

{¶ 44} Based on the circumstances of this case, I do not believe that the trial judge exercised sound discretion in declaring a mistrial. Here, after the court properly excused Juror 6, there was a clear alternative to a mistrial: proceeding with 11 jurors. Indeed, *both* the state and defense agreed to have the case heard by 11 jurors and were ready to proceed. Thus, they shared the same position, i.e., proceed with the jury impaneled and sworn. And although the trial judge heard from both sides and discussed the possibility of proceeding with 11 jurors, she nevertheless opted to sua sponte declare a mistrial.

{¶ 45} The judge's decision to declare a mistrial was based in part on the trial most likely carrying over to the next week, which the judge believed would have created a severe hardship for some members of the jury. The judge inquired of the members, and two indicated that they had a conflict if the case proceeded past Monday of the following week. (But, as noted by the trial judge, the jurors stated during voir dire that they would

fulfill their duty and appear for service despite any hardship.) The judge further expressed concern that if a juror failed to appear on Monday, the defense would then move for a mistrial.

{¶ 46} All of the trial judge's stated concerns, however, fail to demonstrate manifest necessity for declaring a mistrial. Notably, the judge's stated concerns were speculative. And if in fact any of them arose, the court could have addressed them at that time. As for the concern of the defense later moving for a mistrial if there were insufficient number of jurors, such a motion would not have implicated the double-jeopardy issues present in this case. Simply put, I do not find that the trial court adequately considered Davis's "'valued right to have his trial completed by a particular tribunal.'" See *Washington*, 434 U.S. at 503, quoting *Wade v. Hunter* (1949), 336 U.S. 684, 689, 69 S. Ct. 834, 93 L.Ed. 974.

{¶ 47} Further, while I recognize that "manifest necessity" does not mean that a mistrial was absolutely necessary or that there was no other alternative, it does require a trial court to give meaningful consideration to other alternatives before sua sponte ordering a mistrial. This court has repeatedly recognized that a trial court abuses its discretion in sua sponte declaring a mistrial when other less drastic alternatives are easily available. See *N. Olmsted v. Himes*, 8th Dist. Nos. 84076 and 84078, 2004-Ohio-4241 (finding an abuse of discretion in declaring a mistrial when a curative instruction would have sufficiently cured any prejudice); *State v. Coon*, (Apr. 18, 2002), 8th Dist. No. 79641, 2002 WL 598321 (finding an abuse of discretion because the court failed to

consider less drastic alternatives); *State v. Morgan* (1998), 129 Ohio App.3d 838, 719 N.E.2d 102 (finding an abuse of discretion because the trial court failed to cure or otherwise determine the effect of the purportedly tainted evidence).

{¶ 48} Here, the trial court could have proceeded with 11 jurors, as consented to by both the state and Davis, and its sua sponte ordering of a mistrial constitutes an abuse of discretion. Therefore, Davis's retrial was barred by double jeopardy, and his first assignment of error should be sustained. See *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900.