[Cite as *State v. Stephens*, 2016-Ohio-384.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 102660**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**MICHAEL ALAN STEPHENS**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585308-A

**BEFORE:** Keough, J., Celebrezze, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** February 4, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
By: Cullen Sweeney
Assistant Cuyahoga County Public Defender
310 Lakeside Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Erin Stone
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Michael Alan Stephens, appeals his conviction for felonious assault. For the reasons that follow, we reverse and remand for a new trial.

{¶2} In June 2014, Stephens was named in a two-count indictment charging him with felonious assault in violation of R.C. 2903.11(A)(3), and carrying a concealed weapon in violation of R.C. 2923.12(A)(1), with an attendant notice of a prior conviction specification. The charges stemmed from an altercation that occurred in Stephens's home between him and his friend Robert Hill where Stephens pointed his opened pocketknife at Hill. During the altercation, Hill received minor cuts and scratches.

{¶3} Following a jury trial, Stephens was found guilty of felonious assault, but not guilty of carrying a concealed weapon. The court sentenced him to five years of community control sanctions. Stephens now appeals, raising three assignments of error.

I. Self-Defense Instruction

{¶4} Prior to opening statements, defense counsel requested that the trial court give a preliminary instruction on the affirmative defense of self-defense. Following the state's objection, the trial court denied the request, but stated that counsel could question the jurors during voir dire about self-defense.

{¶5} During opening statements, the prosecutor told the jurors that she anticipated that Stephens would argue at trial that he acted in self-defense, and defense counsel told the jurors that Stephens acted in self-defense.

{¶6} The trial testimony showed that Hill and Stephens were best friends and in 2011, started a computer repair business together in northeast Ohio. The business continued operating even after Hill moved to Missouri. Hill returned to northeast Ohio in April 2014 at the

suggestion of Stephens. Stephens and his wife allowed Hill to live with them rent-free, and Stephens also got Hill a job.

{¶7} However, on May 7, 2014, the relationship took an unexpected turn. Hill testified that he had his friend, Josh Wells, help him move his things out of Stephens's house. When he entered the house, Stephens was sitting on the couch. Hill would bring boxes to the door and hand them to Wells, who was waiting outside. After moving approximately six boxes from the upstairs, Hill went downstairs to the basement. Stephens followed Hill down to the basement where an argument ensued over who owned the two computer hard drives that Hill was removing from the storage area. Hill testified that Stephens "got in my face," but admitted that Stephens was not getting physical. Hill further admitted that when Stephens attempted to grab the hard drives from his hand, he pushed Stephens, causing Stephens to fall on the floor. Hill admitted that Stephens may have "fallen hard."

{¶8} According to Hill, Stephens got up, pulled out his pocketknife, and came at him. Hill admitted that Stephens did not attempt to stab him. Nevertheless, Hill immediately grabbed Stephens's arm, slammed him against the wall, and called out to his friend upstairs. Hill testified that Stephens, who was much smaller than him, could not overpower him or escape. Wells came down the stairs, took the knife from Stephens's hand, and ran out the door. Hill testified that he scraped his thumb from holding Stephens up against the wall and scratched his arms from the knife as Stephens was trying to wiggle free. The jury saw photographs of Hill's minor injuries.

{¶9} At the close of the state's case, Stephens moved for a Crim.R. 29 motion for judgment of acquittal on the felonious assault charge. Stephens argued that he brandished the knife only after Hill took his property, refused to give it back, and pushed him repeatedly, which

knocked him to the floor. The trial court denied the request stating, "[t]here was no self[-]defense, in my opinion, evidence from the testimony that I've seen so far." (Tr. 563.)

{¶10} Stephens testified in his own defense. He stated that he followed Hill down into the basement because he suspected Hill was going to take the hard drives from the storage room. According to Stephens, Hill walked into the storage room and grabbed the hard drives off the shelf. When Hill would not give them back despite repeated requests, Stephens reached for them but was shoved by Hill. Stephens reached for them about five more times, and each time Hill shoved him away. However, during the final interaction, Hill pushed Stephens into the wall, causing him to hit his head and fall to the floor.

{¶11} Because Hill was much larger and Stephens knew that he could not survive a fistfight with him, Stephens pulled out his pocketknife. Stephens testified that he was afraid of physical injury and wanted out of the room. Stephens said he made no attempt to cut Hill, but Hill lunged at him and pinned him against the wall, forcing him to raise his arms in defense. Consistent with Hill's testimony, Wells came downstairs at Hill's request and removed the knife from Stephens's hand and ran off.

{¶12} Following Stephens's presentation of his case, he renewed his request for a Crim.R. 29 motion for judgment of acquittal on the felonious assault charge, asserting that he acted in self-defense. Without argument by the state, the judge summarily denied Stephens's motion "for the same reasons. The affirmative defenses are something for the jury to hear." (Tr. 660.)

{¶13} Thereafter, the trial court immediately addressed the issue of jury instructions.

I do not believe you've been saying all along, [defense counsel], about self-defense. This was about property. And, this was not about self-defense.

I'm not going to allow an affirmative defense of self-defense to be given to the jury. However, what I will allow is an inferior offense of aggravated assault to be placed to the jury.

* * *

But like I said, [defense counsel,] I understand where you're going with self-defense, but I just don't see it.

* * *

But I just believe that the action here was initiated by [Stephens] based upon the evidence I saw that it was — he admitted himself it was over the property.

So, at this point I won't allow the self-defense, but I will allow the aggravated assault because I believe there was some evidence of some potential provocation.

(Tr. 660, 662.)

{¶14} During its closing arguments, the state emphasized to the jury that no self-defense instruction was given, despite what the defense asserted throughout the case.

Now you heard [defense counsel] and [Stephens] talk about self-defense. You might have noticed that the [j]udge didn't talk about that. He didn't give you instructions on that. He didn't give you the law on that. And that means you're not to consider it. That's not an option here.

(Tr. 708.)

{¶15} In his first assignment of error, Stephens contends that the trial court erred and violated his state and federal due process rights when it refused his request for a self-defense instruction. The state maintains that the trial court's decision was proper because Stephens was at fault for creating the violent situation over property.

{¶16} We review a trial court's refusal to submit a requested jury instruction for "an abuse of discretion under the facts and circumstances of the case." *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

**{¶17}** Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder. *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus.

> A trial court need not instruct the jury where there is insufficient evidence to support an issue. In reviewing a record to ascertain whether sufficient evidence exists to support the giving of an instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 124, 679 N.E.2d 1099 (1997).

**{¶18}** "The proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence, which if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus.

**{¶19}** In deciding whether to give a self-defense instruction, the trial court must view the "evidence in the light most favorable to the defendant." *State v. Robinson*, 47 Ohio St.2d 103, 110-113, 351 N.E.2d 88 (1976). However, when there is conflicting evidence on the issue of self-defense, the instruction must be given to the jury. *State v. Hill*, 8th Dist. Cuyahoga No. 60736, 1992 Ohio App. LEXIS 3764, *3 (July 16, 1992).

**{¶20}** To prove self-defense, the defendant has the burden of proving that (1) he was not at fault in creating the situation giving rise to the injury that occurred; (2) he had reasonable grounds to believe and an honest belief that he was in imminent danger of bodily harm, and that his only means of retreat or escape from such danger was by the use of force; and (3) if deadly force was used, he must not have violated any duty to retreat or avoid the danger. *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990), citing *State v. Robbins*, 58 Ohio

St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. Whether the defendant used deadly or nondeadly force is a factual determination within the purview of the trier of fact. *State v. Jeffers*, 11th Dist. Lake No. 2007-L-011, 2008-Ohio-1894, ¶ 75, citing *State v. Jackson*, 10th Dist. Franklin No. 00AP-444, 2000 Ohio App. LEXIS 5808, *10 (Dec. 14, 2000); *State v. Gee*, 2d Dist. Miami No. 87-CA-22, 1987 Ohio App. LEXIS 9648, *5 (Nov. 17, 1987).

{¶21} In this case, the trial court would not consider a self-defense instruction because the court believed that Stephens's action was initiated over property. (Tr. 662.) However, viewing the evidence in the light most favorable to Stephens, we find that he presented sufficient evidence for the trial court to instruct the jury on self-defense.

{¶22} Stephens testified that Hill removed the hard drives from the shelves in the basement. According to Stephens, when he reached for them, Hill shoved him. Stephens testified that he tried multiple times to take the hard drives from Hill, but after each attempt, he was shoved by Hill. During the final attempt to retrieve his property, Hill shoved Stephens into the wall, causing Stephens to hit his head and back against the wall and then fall to the floor. Feeling that Hill was going to continue the physical altercation, Stephens pulled out his pocketknife. Stephens testified that it was only after Hill lunged towards him, that his arm went up and he pointed the knife at Hill.

{¶23} According to Stephens, he did not charge at Hill with the knife, try to strike him with the knife, or attempt to cut him with the knife. Stephens testified that he used the knife as protection from Hill, but also to prevent Hill from leaving with his property. One may act in self-defense, or in defense of property, at either the same time or in succession. *State v. Moses*, 10th Dist. Franklin No. 13AP-816, 2014-Ohio-1748, ¶ 41 citing *Columbus v. Eley*, 10th Dist. Franklin No. 91AP-803, 1992 Ohio App. LEXIS 355 (Jan. 28, 1992). Accordingly, if believed,

sufficient evidence was presented from which the jury could conclude that Stephens was not at fault for creating the situation, and that he reasonably believed he was in imminent danger of bodily harm, causing him to pull his knife out.

**{¶24}** Furthermore, because the altercation occurred in Stephens's home, Stephens may not have had a duty to retreat before acting in self-defense, if a duty to retreat was required. *See* R.C. 2901.09(B). "Commonly referred to as the castle doctrine, this exception to the duty to retreat derives from the doctrine that one's home is one's castle and one has a right to protect it and those within it from intrusion or attack." *State v. Hubbard*, 10th Dist. Franklin. No. 11AP-945, 2013-Ohio-2735, ¶ 21. The General Assembly "'expanded the reach of the castle doctrine" by creating a presumption that the defendant acted in self-defense "when using defensive force that is intended or likely to cause death or great bodily harm.'" *Id.*, quoting R.C. 2901.05(B)(1). Although this presumption of self-defense does not apply to force used against a person who "has a right to be in, or is a lawful resident of, the residence," R.C. 2901.05(B)(2)(a), any right to be present in a residence terminates once an individual commits a crime against the homeowner. *See State v. Steffen*, 31 Ohio St.3d 111, 509 N.E.2d 383 (1987).

**{¶25}** Ultimately, whether the evidence establishes the elements of self-defense is left to the trier of fact to decide. *State v. Morton*, 147 Ohio App.3d 43, 2002-Ohio-813, 768 N.E.2d 730, ¶ 52 (8th Dist.). In this case, the trier of fact was the jury, not the trial judge. The trial court improperly usurped the jury's role by making its own evaluation of the weight of the evidence in deciding not to give the self-defense instruction.

**{¶26}** Accordingly, sufficient evidence was presented by Stephens that, if believed, would cause reasonable minds to reach the conclusion that Stephens acted in self-defense. The

trial court abused its discretion in refusing to give a self-defense instruction to the jury; Stephens was denied a fair trial.

{¶27} The assignment of error is sustained.

## II. Inadmissible Evidence of Prior Convictions

{¶28} During Stephens's cross-examination, the state played for the jury a recorded interview between Stephens and a detective. During this recorded interview, Stephens indicated that he was not a violent person. The state questioned Stephens about the statement. When Stephens agreed with his statement that he was not a violent person, the state then asked whether he ever "acted in violence towards anybody in [his] life." (Tr. 633.) Over objection, Stephens admitted that he had acted in violence before, but that he was not a violent person. The state then questioned Stephens about a 2004 domestic violence conviction in Tennessee. Over objection, Stephens admitted he had been convicted.

{¶29} At sidebar, Stephens moved for a mistrial based on the improper questioning about the prior conviction. In rebuttal, the state contended that Stephens opened the door by denying on cross-examination that he was a violent person and then admitting he committed acts of violence in the past. The trial court agreed with the state.

{¶30} In his second assignment of error, Stephens contends that his right to a fair trial was violated when the state was permitted to introduce inadmissible and highly prejudicial evidence of his prior convictions. We agree.

{¶31} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Therefore, an appellate court will not disturb a trial court's ruling absent an abuse of discretion. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14.

**{¶32}** The prosecution may not initiate questioning to establish a criminal defendant's propensity for violence in a trial for violent offenses. *State v. Eldridge*, 10th Dist. Franklin No. CA2002-10-021, 2003-Ohio-7002, ¶ 41, citing Evid.R. 404(A)(1). If, however, the defendant "opens the door" by introducing evidence of his character for peacefulness, the state may then "rebut or impeach this evidence on cross examination with evidence, including otherwise inadmissible misdemeanor convictions, that illustrates a propensity for violence." *Elkridge* at ¶ 41-44; *State v. Davis*, 195 Ohio App.3d 123, 2011-Ohio-2387, 958 N.E.2d 1260, ¶ 26 (8th Dist.). Therefore, if the defendant does not affirmatively introduce character evidence, the state has nothing to rebut and may not introduce any evidence of the defendant's propensity for violence. *Id*.

**{¶33}** Just as it did at trial, the state on appeal contends that Stephens opened the door by testifying that the statements in the recorded interview were truthful — that he was not a violent person. However, a review of the record demonstrates that Stephens offered no testimony on direct examination regarding his character for peacefulness or violence. Rather, it was the state that brought up this character evidence when it chose to play a portion of Stephens's police statement to the jury in which Stephens tells police he is not a violent person. While the state was allowed to play the defendant's police statement for the jury to view and hear, it could not use the statements made in the interview as a vehicle for opening its own door to improper questioning about Stephens's character. Therefore, the trial court abused its discretion in allowing the state to elicit this testimony.

**{¶34}** We further find that the admission of this evidence was not harmless. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In order to find an error harmless, a reviewing court must be able to

declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). A reviewing court may overlook an error where the remaining admissible evidence, standing alone, constitutes "overwhelming" proof of a defendant's guilt. *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983). "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Brown*, 65 Ohio St.3d 483, 485, 605 N.E.2d 46 (1992).

{¶35} In this case, a reasonable possibility exists that Stephens's testimony contributed to his conviction. The jury was tasked with considering a case where the credibility of the witnesses was crucial. The introduction of a ten-year-old domestic violence conviction was clearly used to portray Stephens as a violent person. The jury could reasonably conclude that Stephens acted in conformity with his past; thus the testimony was prejudicial. Accordingly, Stephens's second assignment of error is sustained.

{¶36} While each assignment of error individually is a ground for reversal and for Stephens to receive a new trial, the cumulative effect of these errors clearly reveal that Stephens was deprived of a fair trial. Having found merit to both Stephens's first and second assignments of error, Stephens's third assignment of error challenging the effective assistance of counsel is hereby rendered moot.

{¶37} Judgment reversed and case remanded for a new trial on the felonious assault charge.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
TIM McCORMACK, J., CONCUR