The STATE of Ohio, Appellee,

v.

BILLINGS, Appellant.*

[Cite as *State v. Billings* (1995), 103 Ohio App.3d 343.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66829.

Decided April 6, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1455, 656 N.E.2d 950.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Diane Smilanick,* Assistant Prosecuting Attorney, for appellee.

*John P. Parker,* for appellant.

O'DONNELL, Judge.

On November 4, 1993, the trial court, sitting without a jury, convicted the defendant, Anton I. Billings, of all four counts with which he was charged: aggravated arson, improper discharge of a firearm, and two counts of felonious assault with specifications. The defendant was sentenced to an aggregate fifteen-to-forty-year term of incarceration.

Billings now appeals his convictions to our court and has assigned seven errors for our review.

The facts at trial revealed that during the early morning hours of August 21, 1992, Billings had fired gunshots and thrown a fire bomb through the dining room

window of the home of Betty Washington which landed on her, engulfing her in flames. Her brother-in-law, Millar Owens, who was spending the night, smothered the flames but not before she received second and third degree burns on her hip, arm and leg requiring surgery for skin grafts.

Valerie Washington, daughter of Betty, testified that she had known Billings for six or seven years, and had a relationship with him for six to eight months, but that he had become aggressive and threatening toward her. She therefore moved to Michigan, but returned to Cleveland shortly before the fire. Monica Johnson testified that she dated Billings in the spring of 1992, and that she heard him talk about getting revenge on Valerie by killing her mother.

Eric McNairy, an eighteen-year-old member of the Rolling Twenty Crips, testified, and his brother Eugene corroborated, that Billings stated he should kill Valerie and wanted to burn her house. Both heard Billings brag and talk about throwing the Molotov cocktail into the Washington house after the August 21, 1992 incident.

## I

"The trial court improperly allowed other acts evidence in violation of the Rules of Evidence and denied the appellant a fair trial under the Ohio and U.S. Constitutions."

In the first assignment of error, Billings alleges the trial court erred in permitting "other acts" testimony. Here, complaint is made that the trial court admitted evidence that Billings had threatened Valerie's life. R.C. 2945.59 states in part:

"In any criminal case in which defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, *any acts of the defendant* which tend to show his motive, or intent, the absence of mistake or accident * * * may be proved * * *." (Emphasis added.)

Our review suggests that motive and intent were relevant and material, and we find that his statements can be properly considered by the trier of fact in connection with the elements of the crimes and the defendant's intent in committing the crimes.

The trial court did not err in admitting this evidence.

## II

"The appellant was improperly impeached on cross-examination by the use of a misdemeanor conviction in violation of Evidence Rule 609 and 410."

■ In the second assigned error, Billings argues improper impeachment under Evid.R. 609 when the state used his misdemeanor conviction on cross-examination. Appellant's argument is ill-founded and counsel has attempted to mislead our court. A careful review of the transcript reveals at 412–413:

"Q. In fact, you beat him up quite regularly didn't you?

"A. No, I didn't.

"Q. Isn't it a fact that he filed a complaint with the East Cleveland Police Department for domestic violence against you?

"A. No, he didn't.

"* * *

"Q. Excuse me. Weren't you found guilty for beating up your brother, Anthony Johnson?

"A. I can't remember."

The prosecutor then marked state's Exhibit 14, a certified copy of the journal entry of defendant's conviction for domestic violence. The prosecutor offered and the able trial judge properly admitted this exhibit into evidence, not to impeach the defendant's credibility by showing conviction of a misdemeanor, but rather to demonstrate the defendant was not truthful about a specific incident involving the domestic violence issue. Counsel's effort to mislead this court is noted; the assignment of error is without merit and is overruled.

### III

"The appellant's right to confront witnesses, right to counsel and due process was denied when the detective was allowed to testify about hearsay statements between the detective and the appellant's former counsel concerning a privileged conversation attributed to the appellant."

■ In the third assignment of error, Billings argues that his former attorney, Ms. Kim Trumbo, told Detective Ventura that Billings had remained at his home on Parkview with his girlfriend Monica Johnson on the night of the incident. Detective Ventura testified to this at trial and also verified that these statements were made in the defendant's presence without objections.

Appellant claims that the statements are hearsay, that they are privileged, and that they deny an opportunity to cross-examine the declarant. This argument is meritless. Clearly, any statement made to a police officer in the defendant's presence by counsel cannot be construed as hearsay since it is in the nature of an admission by the defendant. The impact of the statement is to establish an alibi

for the defense. The state is not precluded from offering this evidence and the court did not err in admitting it into the evidence at trial.

We note also that while trial counsel originally objected to this testimony, objections were not made after an *in camera* sidebar conference.

## IV

"The court improperly allowed hearsay statements into evidence which deprived the appellant of a fair trial."

■ This assignment concerns testimony of Valerie Washington about statements made by defendant to her mother Betty Washington in a telephone conversation. Defendant asserts the trial court erred by admitting hearsay.

Our review of the transcript of Valerie Washington's testimony demonstrates that she testified she heard the appellant because he was yelling into the telephone. Hence, this is not precluded under Evid.R. 602. We find no merit to this assignment of error.

## V

"The appellant was denied his constitutional right to a jury trial pursuant to Article I, Section 5 of the Ohio Constitution."

■ Appellant argued initially that he was not informed on the record that the jury's verdict must be unanimous and, therefore, he could not knowingly, intelligently and voluntarily waive his right to trial by jury. This alleged error was not raised at the trial level and cannot now be considered on appeal. This argument is not well taken.

Appellant was then granted leave by this court to file supplemental authority in support of this assignment of error and now relies upon the case of *State ex rel. Jackson v. Dallman* (1994), 70 Ohio St.3d 261, 638 N.E.2d 563, for the proposition that the failure of the trial court to comply with R.C. 2945.05 deprives the court of jurisdiction to try the defendant. Specifically, that statute requires the court to file the jury waiver with the clerk and make it part of the record in the case.

We have compared the facts in *Jackson* with the facts in this case and find as follows.

In *Jackson,* evidence that the defendant signed a jury waiver was presented to the court via an affidavit submitted by the prosecutor. The waiver was *not part* of the record in the case. Also, no evidence existed that it was ever filed with the clerk of courts and the docket sheet on the case did not indicate any filing with the clerk. Further, the court was presented with an uncertified copy of a

transcript of proceedings suggesting the defendant was in court and did waive his right to trial by jury and an uncertified *copy* of the waiver form itself.

Our case presented substantially different facts. Anton Billings was present in court with counsel and the trial judge carefully examined him, explained his rights and determined his action in seeking the waiver was knowingly, intelligently and voluntarily entered. This is recorded in a certified copy of the proceedings. Next, our examination of the file shows that the waiver is contained in and made a part of the record in this case. It is the original document and bears the signature of the defendant which is attested and witnessed by trial counsel in this case. We further find that unlike in *Jackson,* the clerk's docket sheet verifies that the knowledgeable trial judge entered a journal entry contemporaneous with the signing of the waiver which was journalized and is part of the docket sheet in this file. Since a court speaks through its journal, the trial judge has eliminated any possible issue regarding the authenticity of the jury waiver which is in the record in this case.

Accordingly, we find that unlike *Jackson,* since we have the original waiver and it has been made part of the record in this case, and since there exists a journal entry of the waiver filed in the clerk's office and made part of the docket sheet of entries in this case, and since the transcript of proceedings presented to our court is certified, our factual situation is substantially different from *Jackson.*

We find that the trial court has complied with the provisions of R.C. 2945.05 and this assignment of error is overruled.

## VI and VII

"VI. The evidence is insufficient to sustain the appellant's convictions.

"VII. The verdicts are against the weight of the evidence."

We consider these assignments together because they are similar.

The Ohio Supreme Court has addressed these issues and guides our review. In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the court stated in paragraph two of the syllabus:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)

The court further stated at 273, 574 N.E.2d at 503:

"Thus, in reviewing both weight and sufficiency of the evidence, the same test is applied."

Upon a thorough reading of the transcript in this case and exhaustive review of the record and exhibits, we conclude that reasonable minds could have reached the conclusions finding the defendant guilty on all four counts.

These assignments of error are therefore overruled.

The trial court's judgment of conviction of this defendant is affirmed.

*Judgment affirmed.*

BLACKMON, P.J., and DYKE, J., concur.