DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the decision of the Lawrence County Court of Common Pleas which convicted Defendant-Appellant Irvin F. Walker of failure to comply with an order or signal of a police officer, a violation of R.C. 2921.331. Appellant was sentenced to, inter alia, four years imprisonment.
 {¶ 2} Appellant argues: (1) the trial court erred by admitting character evidence concerning prior bad acts and misdemeanor convictions; (2) the evidence was insufficient to support the jury's finding that appellant's behavior posed "a substantial risk of serious physical harm to persons or property," as set forth in R.C.2921.331(C)(5)(a)(ii); (3) the trial court did not consider the sentencing factors set forth in R.C. 2929.12; and (4) the trial court erred by denying his motion for a new trial because there was juror misconduct.
 {¶ 3} We find appellant's arguments lack merit, and we affirm the well-reasoned judgment of the trial court.
I. Proceedings Below
 {¶ 4} On the evening of July 22, 2001, Lawrence County Sheriff's Deputy Aaron Bollinger was dispatched to the home of Christina Walker. Ms. Walker alleged that her husband, Defendant-Appellant Irvin F. Walker, from whom she was then separated, had shot a firearm at her residence.
 {¶ 5} While Bollinger was speaking with Ms. Walker, a light-blue pickup truck slowly pulled in front of the house. The truck was approximately fifteen feet from where Bollinger and Ms. Walker were standing.
 {¶ 6} Bollinger shined his flashlight into the face of the driver, and identified him as appellant.
 {¶ 7} Appellant then left the scene at a high rate of speed.
 {¶ 8} Bollinger then entered his cruiser and commenced a pursuit of appellant.
 {¶ 9} At one point, Bollinger lost sight of appellant, but relocated him stopped at a stop sign. Bollinger pulled in behind appellant and activated his siren and overhead lights.
 {¶ 10} However, appellant ignored Bollinger, accelerated his vehicle, and the pursuit continued.
 {¶ 11} The pursuit reached speeds in excess of eighty m.p.h. and continued through two residential neighborhoods. At one point, they passed at least ten individuals who were standing in a yard near the roadway.
 {¶ 12} Ultimately, appellant escaped Bollinger by driving into a field. Bollinger apprehended appellant at a later date.
 {¶ 13} In October 2001, a jury trial commenced on the sole indicted charge of failure to comply with an order or signal of a police officer, a violation of R.C. 2921.331. The charge was for a third-degree felony because it was alleged that appellant's behavior posed "a substantial risk of serious physical harm to persons or property." R.C.2921.331(C)(5)(a)(ii).
 {¶ 14} Bollinger testified for the state; appellant testified on his own behalf.
 {¶ 15} The jury returned a guilty verdict against appellant. The trial court sentenced him to four years imprisonment and imposed a $5,000 fine.
 {¶ 16} Subsequently, appellant filed a timely motion for a new trial on the grounds of jury misconduct and that the verdict was unsupported by the evidence. The trial court denied the motion.
II. The Appeal
 {¶ 17} Appellant timely filed this appeal, assigning the following errors for our review.
 {¶ 18} First Assignment of Error: "The State of Ohio failed to establish each and every material element of the offense beyond a reasonable doubt, and the denial by the trial court of the defendant/appellant's [sic] Motion for Judgment of Acquittal is reversible error."
 {¶ 19} Second Assignment of Error: "The trial court committed prejudicial, reversible error in permitting the State of Ohio, over objection of the Defendant, to cross examine the defendant on prejudicial, inflammatory matters, in the form of prior bad acts and/or misdemeanor convictions."
 {¶ 20} Third Assignment of Error: "The trial court abused its discretion in denying Defendant's Motion for New Trial upon the grounds of juror misconduct."
 {¶ 21} Fourth Assignment of Error: "The trial court did not take into consideration all of the mandatory factors when it sentenced the defendant, and/or the defendant/appellant's [sic] sentence is inappropriate, improper, harsh, and too severe under all of the circumstances."
 {¶ 22} We will address these assignments of error in an order more conducive to our analysis.
A. Evidentiary Challenges
 {¶ 23} Appellant argues in his Second Assignment of Error that the trial court erred on evidentiary grounds concerning two areas of testimony: (1) Bollinger's testimony on direct-examination that he had spoken with appellant's probation officer; and (2) appellant's testimony on cross-examination concerning prior misdemeanor convictions.
 {¶ 24} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. See State v. Sage
(1987), 31 Ohio St.3d 173, 510 N.E.2d 343. Accordingly, we will not disturb a trial court's evidentiary ruling absent a demonstration of an abuse of discretion, which is a decision that is unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 25} With this standard in mind, we will address appellant's arguments separately.
1. Bollinger's Testimony Concerning Appellant's Probation Officer
 {¶ 26} During the direct examination of Bollinger, it was determined that Bollinger had identified appellant in his vehicle by shining his flashlight on him and that appellant then fled the scene.
 {¶ 27} The state then asked Bollinger, "And the basis of your pursuit was what, a combination of what [Ms. Walker] had just told you?"
 {¶ 28} Appellant answered "Correct," and the state then asked, "And anything else?"
 {¶ 29} Appellant responded that, "There were previous affidavits signed the night before * * * criminal affidavits against [appellant] that [sic] I took the report."
 {¶ 30} The state then proceeded to inquire and determine that Bollinger had spoken with appellant's probation officer and it was determined that a warrant was issued for his arrest.
 {¶ 31} Appellant argues that this line of questioning amounted to the inappropriate introduction of character evidence regarding prior bad acts. See, generally, Evid.R. 404(B) ("[E]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's character as to criminal propensity.).
 {¶ 32} This is a mischaracterization of the issue at hand. Here, the state's line of questioning did not concern the character of appellant; it was not offered to prove action in conformity therewith. Rather, it was a specific inquiry as to why the witness acted as he did; specifically, why Bollinger felt it was necessary to pursue appellant.
 {¶ 33} Accordingly, the issue becomes whether this testimony was hearsay; that is, whether the out-of-court statements, which Bollinger relied on in determining to pursue appellant, were offered to prove the truth of the matter asserted. See Potter v. Baker (1955), 162 Ohio St. 488,124 N.E.2d 140; State v. Nabozny (1978), 54 Ohio St.2d 195, 375 N.E.2d 784, vacated on other grounds (1978), 439 U.S. 811, 99 S.Ct. 70.
 {¶ 34} In State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, the Supreme Court of Ohio explained that, "testimony which explains the actions of a witness to whom a statement was directed, such as to explain the witness' activities, is not hearsay. Likewise, it is non-hearsay if an out-of-court statement is offered to prove a statement was made and not for its truth, * * * [but] to show a state of mind." (Citations omitted.) Id. at 262, relying on State v. Thomas (1980), 61 Ohio St.2d 223,400 N.E.2d 401.
 {¶ 35} Thus, because Bollinger's reliance on the conversation with the probation officer was only introduced to show Bollinger's state of mind — that is, why he decided to pursue appellant — and not offered for the truth of the matter asserted, it cannot be said that the trial court abused its discretion by allowing this testimony into evidence.
2. Appellant's Testimony Concerning His Prior Misdemeanor Convictions
 {¶ 36} On cross-examination, appellant stated the following: "I mean, [the police] do look for me when I do something wrong, but I ain't done nothing wrong for awhile [sic]. I got married, I'm trying to settle down. I'm trying to live my life and people won't leave me alone and let me do it."
 {¶ 37} The state then challenged appellant on his assertion that he had not been in trouble recently; the state asked, "Now you haven't done anything wrong for awhile [sic]?"
 {¶ 38} Appellant responded, "No, I haven't."
 {¶ 39} The state then asked, "What about County Court?"
 {¶ 40} Over objection, the trial court allowed the questioning to continue on the ground that "[h]e opened the gates."
 {¶ 41} Appellant then testified that he had been recently convicted of several misdemeanors, including domestic violence and aggravated menacing.
 {¶ 42} Appellant argues that this line of questioning amounted to improper impeachment under Evid.R. 609 by using evidence of misdemeanor convictions for the purpose of attacking appellant's credibility. See, generally, Evid.R. 609.
 {¶ 43} Again, this is a mischaracterization of the proceedings below.
 {¶ 44} Evid.R. 609 concerns impeachment by evidence of a criminal conviction. Relevant to the instant case, it provides that evidence that the accused has been convicted of a crime is admissible in one of two circumstances: (1) if it is a felony and the probative value outweighs the danger of unfair prejudice, confusion of the issues, or of misleading the jury; or (2) if the crime, felony or otherwise, involved dishonesty or false statement. See Evid.R. 609(A)(1) and (2).
 {¶ 45} While Evid.R. 609 clearly does not permit the use of a misdemeanor conviction to impeach the accused, Evid.R. 608, in certain circumstances, does.
 {¶ 46} Evid.R. 608 concerns evidence of character and witness conduct. Relevant to the instant case, it provides the following: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, ifclearly probative of truthfulness or untruthfulness, be inquired into oncross-examination of the witness * * * concerning the witness's characterfor truthfulness or untruthfulness * * *." (Emphasis added.) Evid.R. 608(B).
 {¶ 47} Here, appellant put his own character at issue by stating "I ain't done nothing wrong for awhile [sic]." The state elicited testimony from appellant regarding misdemeanor convictions not in an effort to impeach appellant's credibility by showing conviction of a misdemeanor, but rather to demonstrate that appellant was not truthful. Thus, the trial court allowed testimony regarding these objections not under the authority of Evid.R. 609, as appellant contends, but rather under the authority of Evid.R. 608.
 {¶ 48} Indeed, sister districts have addressed this precise issue and relied on the important distinction we are presently highlighting between the two evidentiary rules. See State v. Billings (1995),103 Ohio App.3d 343, 659 N.E.2d 799 ("The prosecutor offered and the able trial judge properly admitted this exhibit into evidence, not to impeach the defendant's credibility by showing conviction of a misdemeanor, but rather to demonstrate the defendant was not truthful * * *."); State v.King (Aug. 30, 1995), Summit App. No. 16921 ("[The a]ppellant put his own character in issue * * *. The prosecution offered two specific instances of Appellant's conduct in order to rebut his claims; the fact that these specific instances of conduct resulted in convictions for domestic violence does not alter our analysis."); see, generally, State v. Hooper
(June 1, 2001), Montgomery App. No. 18375.
 {¶ 49} We overrule appellant's Second Assignment of Error.
B. Sufficiency of the Evidence
 {¶ 50} Appellant argues in his First Assignment of Error that the evidence did not support the jury's finding that appellant's behavior posed "a substantial risk of serious physical harm to persons or property," as set forth in R.C. 2921.331(C)(5)(a)(ii). We disagree.
 {¶ 51} When an appellant challenges the sufficiency of evidence, the relevant inquiry is "whether, `after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis sic.) State v. Johnson, 88 Ohio St.3d 95,2000-Ohio-276, 723 N.E.2d 1054, quoting Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781; see State v. Green (1996),117 Ohio App.3d 644, 691 N.E.2d 316; Whiteside, Ohio Appellate Practice (2001 Ed.) 287-291, Standards of Review.
 {¶ 52} Here, Bollinger testified to the following: the pursuit exceeded eighty m.p.h., spanned two residential neighborhoods, and they passed ten individuals who were standing in a yard near the roadway.
 {¶ 53} Appellant does not contest that these facts satisfy the requirement set forth in R.C. 2921.331(C)(5)(a)(ii). Rather, he argues that the jury was erroneous to believe Bollinger's testimony over his own.
 {¶ 54} Time and again it has been emphasized that reviewing courts are to give deference to fact-finders — here the jury — because they are "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273; accord Statev. Banks (1992), 78 Ohio App.3d 206, 214, 604 N.E.2d 219 ("[Q]uestions of weight and credibility are primarily for the trier of fact."); Whiteside, Ohio Appellate Practice (2001 Ed.) 287-291, Standards of Review (explaining that deference, regarding questions of weight and credibility, should be given to the trial court because, "the finder of fact has had an opportunity to observe the demeanor of the witnesses, a factor not normally preserved in the record of appeal."). We see no need to break with this precedent in the case sub judice.
 {¶ 55} Thus, it cannot be said that, after viewing the evidence in a light most favorable to the state, a rational trier-of-fact could not have found that appellant's behavior "posed a substantial risk of serious physical harm to persons or property," as set forth in R.C.2921.331(C)(5)(a)(ii). See State v. Johnson, supra.
 {¶ 56} We overrule appellant's First Assignment of Error.
C. Adherence to Sentencing Guidelines
 {¶ 57} Appellant argues in his Fourth Assignment of Error that the trial court erred in imposing a four-year prison sentence. In support of this claim, he argues, essentially, that the trial court did not properly consider the factors set out in R.C. 2929.12. We disagree.
 {¶ 58} R.C. 2929.11(A) states that, "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." Id. To achieve these purposes, the sentencing court must consider: first, the factors listed in R.C. 2929.12(B) and (C), regarding the seriousness of the offender's conduct; and, second, the factors listed in R.C. 2929.12(D) and (E), regarding the offender's propensity for recidivism. See, generally, Statev. Smith (Mar. 17, 1999), Meigs App. No. 98CA2; State v. Kauff (Nov. 9, 1998), Meigs App. No. 97CA13.
 {¶ 59} In assessing whether the lower court considered these factors, we emphasize that the trial court is not required to make specific findings: "The [Ohio Revised Code] does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors [pursuant to] R.C. 2929.12."State v. Arnett, 88 Ohio St.3d 208, 215, 2000-Ohio-302, 724 N.E.2d 793; see, generally, State v. Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110,715 N.E.2d 131.
 {¶ 60} Here, the trial court found that recidivism was very likely and that there was an extensive history of criminal convictions. The trial court based these findings on the pre-sentence-investigation report and the testimony of appellant. Appellant admitted to serving at least one prior prison sentence and acknowledged being convicted of domestic violence and aggravated menacing. Further, the trial court noted appellant's history of violating community-control sanctions.
 {¶ 61} In response, appellant challenges the factual findings of the trial court and merely asserts, without pointing to any evidence in the record that, "[a]ll of the requisite relevant factors to be considered in passing sentence were not considered by the trial court * * *."
 {¶ 62} Again, we emphasize that the trial court is not required to "use specific language or make specific findings * * * to evince the requisite consideration of the applicable seriousness and recidivism factors * * *." State v. Arnett, 88 Ohio St.3d at 215, 2000-Ohio-302,724 N.E.2d at 799. Further, we emphasize that, absent a contrary showing in the record, it is presumed that the lower court considered the necessary statutory criteria. See State v. Ramirez (1994), 98 Ohio App.3d 388,648 N.E.2d 845.
 {¶ 63} In sum, we cannot find that the prison sentence was unsupported by the record or contrary to law. Accordingly, we overrule appellant's Fourth Assignment of Error.
D. Juror Misconduct
 {¶ 64} Appellant argues in his Third Assignment of Error that the trial court erred by denying his motion for a new trial because there was juror misconduct. We disagree.
 {¶ 65} The granting or denial of a motion for a new trial is within the sound discretion of the trial court, and that court's ruling will not be disturbed on review absent a demonstration that the trial court abused its discretion. See Yungwirth v. McAvoy (1972),32 Ohio St.2d 285, 291 N.E.2d 739.
 {¶ 66} Appellant attached to his motion for a new trial an affidavit of a prison inmate who averred that he had contacted one of the jurors once on the day the trial was to commence, and then again after the trial had commenced. Apparently, he misrepresented himself as the brother of appellant and asked the juror to acquit appellant.
 {¶ 67} The state explained that it had contacted the juror, and that the juror had stated that she had in fact been contacted at least once by a prisoner. However, the state insisted that the inappropriate communication had no bearing on her decision.
 {¶ 68} The Supreme Court of Ohio has recently addressed this very issue, and emphasized that appellants must demonstrate prejudice in order for a trial court's decision on whether there was jury misconduct to be reversed:
 {¶ 69} "Our opinion does not abrogate the long-standing rule that juror misconduct should not be the cause of a reversal absent prejudice. Neither does it create a presumption of prejudice whenever an outsider invades the sanctity of jury deliberations. * * *. Instead, we will continue to rely upon the sound discretion of our trial judges. When confronted with extraordinary circumstances, a trial court must be allowed to consider all of the pertinent circumstances in arriving at a decision. Given the circumstances in this case, the trial court did not abuse its discretion by granting a new trial." Koch v. Rist (2000),89 Ohio St.3d 250, 2000-Ohio-149, 730 N.E.2d 963.
 {¶ 70} Here, the trial court, at the close of the hearing on appellant's motion for a new trial, ruled against appellant on the basis, inter alia, that appellant had failed to demonstrate prejudice. Specifically, the trial court explained that the affidavit of the inmate indicated that the inmate requested the juror to acquit appellant. And, according to the inmate, the juror agreed. This request was, obviously, in favor of appellant. However, the juror ultimately voted to convict appellant. Appellant did not offer any explanation as to how this inappropriate communication prejudiced his defense.
 {¶ 71} Likewise, on appeal, appellant merely presents this Court with the same facts and requests us to reverse the trial court's decision regarding juror misconduct. Again, appellant offers no explanation as to how this prejudiced his case.
 {¶ 72} We see no reason to second-guess the decision of the trial court in this regard; it is simply not the role of an appellate court to speculate as to the actual prejudice suffered by appellant. See State v.Heath (Feb. 3, 1997), Warren App. No. CA96-04-035, motion to file delayed appeal denied, 79 Ohio St.3d 1420, 680 N.E.2d 157 (explaining that, proof of actual prejudice must be specific, particularized and non-speculative); United States v. Greer (Vt. 1997), 956 F. Supp. 525,528 (stating that a defendant must present concrete proof of actual prejudice and not mere speculation of actual prejudice); see, generally,State v. Keith (1997), 79 Ohio St.3d 514, 1997-Ohio-367, 684 N.E.2d 47
(trial court did not abuse its discretion or commit plain error in allowing jurors to remain on panel after in-chamber questioning of possibly tainted jurors); State v. Ospina (1992), 81 Ohio App.3d 644,647, 611 N.E.2d 989 (finding no error by the trial court in allowing jurors to remain on jury when they stated that they could disregard third-party's comments made during recess).
 {¶ 73} We overrule appellant's Third Assignment of Error.
III. Conclusion
 {¶ 74} For the foregoing reasons, we overrule appellant's assignments of error and affirm the judgment of the Lawrence County Court of Common Pleas.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the LAWRENCE COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY DAYS UPON THE BAIL PREVIOUSLYPOSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., and Harsha, J.: Concur in Judgment Only.