[Cite as *State v. Serrano*, 2016-Ohio-4691.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 102583**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RAYMOND SERRANO

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585944-A

**BEFORE:** Keough, P.J., Boyle, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 30, 2016

**ATTORNEY FOR APPELLANT**

John T. Castele
Rockefeller Building, Suite 1310
614 W. Superior Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Kelly N. Mason
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant, Raymond Serrano, appeals his convictions. For the reasons that follow, we affirm.

{¶2} On June 13, 2014, Serrano was named in a seven-count indictment charging him with felonious assault with one- and three-year firearm specifications, notice of prior conviction, and repeat violent offender specification (Count 1); discharge of a firearm on or near prohibited premises with attendant one- and three-year firearm specifications (Count 2); carrying a concealed weapon (Count 3); improperly handling firearms in a motor vehicle (Count 4); two counts of having weapons while under disability (Counts 5 and 6); and intimidation of crime victim or witness (Count 7). Serrano elected to bifurcate and try to the bench the notice of prior conviction and repeat violent offender specification attendant to Count 1, and Counts 5 and 6, having weapons while under disability. The remaining counts were tried to a jury where the following evidence was presented.

{¶3} On May 22, 2014, Patricia Russo was seated in her vehicle in the area of W. 48th Street and Kouba Avenue reviewing her car manual when she noticed a dark-colored full-size truck next to her vehicle. She noticed a man with a gun in his hand, get out of the truck, walk around the truck, and fire the weapon across the field. Russo then noticed a man with a bicycle and dog in the middle of the field get up off the ground, and run away. The man with the gun got back into the truck and drove off. According to

Russo, the events happened very quickly and she did not hear the shooter say anything, but she admitted that her windows to her vehicle were rolled up.

{¶4} Russo called 911 and reported the shooting. Her call was played before the jury. Russo was able to describe the shooter's truck and give a partial license plate number. She further described the shooter as a black male with facial hair, wearing a blue or black baseball-style coat displaying an "R" name — "like Ronnie or something" — where the name would appear on the coat. She told the dispatcher that she saw the gun and it had a camouflage-type design.

{¶5} Wellington Wilson testified he has known Serrano from the neighborhood since he was younger and they used to be good friends. However, a year prior to the May 22 shooting, he and Serrano got into an altercation where Serrano punched him, stomped on his bicycle, and brandished a firearm. When the police investigated and questioned Serrano, no firearm was discovered. After this altercation, another incident occurred where Serrano brandished a firearm. After these incidents, Wilson obtained a no-contact order against Serrano.

{¶6} Wilson testified that on May 22, 2014, he was riding his bicycle while walking his dog when he saw Serrano's black Dodge Ram truck in the area. As Wilson was riding back from the store, he saw Serrano's truck back out of a driveway. According to Wilson, Serrano's truck engine revved up, and Wilson believed that Serrano was attempting to catch up with him. Wilson planned on cutting through a field to flee from Serrano. As he was in the middle of the field, he saw Serrano's truck stop by the

field, and he heard Serrano yell, "[W]here you going, bitch?" As Wilson looked back, he saw Serrano point and shoot a gun in his direction. Wilson quickly rode off and called the police.

{¶7} The jury heard Wilson's 911 call. During the call, Wilson identified the shooter as "Raymond Ramos." He described the shooter as an Hispanic male, wearing a black sweater and blue jeans, who lived on W. 52nd Street and who drove a Dodge Ram pickup. He told dispatch that he knew the shooter, they grew up together, and he had obtained a no-contact order against the shooter because the shooter had pulled a gun on him twice in the past. Wilson explained to the jury that although he said "Ramos" to dispatch he meant "Serranos," and he was 100 percent positive the person in the truck who shot at him was Serrano. He identified Serrano in court as the shooter.

{¶8} Wilson told the jury about a subsequent incident that occurred on June 5, 2014, after Serrano was arrested but prior to indictment. On that day, Serrano was seen riding his motorcycle back and forth in front of Wilson's house. According to Wilson, Serrano pulled up in front of Wilson's house and was pointing toward Wilson. Wilson testified that he felt threatened and harassed because Serrano was not supposed to be on his street due to the no-contact order.

{¶9} Wilson also testified about incidents that occurred after Serrano was indicted. He stated that Serrano drove up next to him and stated, "Oh, you ain't gonna make it in court." Wilson testified that he took this statement to mean that he would be dead —

"I'm not going to make it to court." Wilson also told the jury that after court one day, he believed that Serrano tried to run him over.

{¶10} Cleveland police officer, Kevin McLain, testified that on May 22, 2014, he was working basic patrol with his partner, officer Kevin Walsh, when they received a radio call for a male who was shot at in the area of W. 48th Street and Kouba Avenue. When they responded, they located Wilson and received information that the suspect's last name was "Serrano," and about the vehicle the suspect was driving, and the address where the suspect resided. No shell casings were located or recovered.

{¶11} Officer Walsh testified that he interviewed Russo, who stated that she could identify the shooter. He further testified that he received a call that another police unit had located the truck parked a few streets over in front of the residence where the truck was registered. When no one answer the door to that residence, the truck was towed for investigation.

{¶12} Detective John Kubas testified that he was assigned to investigate the shooting. He stated that based on the initial investigation and the subsequent interviews he conducted with Wilson and Russo, he issued an arrest warrant for Serrano. Detective Kubas testified that the truck that was towed was registered to Serrano's brother, Hermes Serrano. He also stated that the truck was processed and no evidence in connection with the investigation or case was discovered. He testified that on June 5, he received a report of intimidation of a crime victim that Wilson made against Serrano. A few weeks later, another report was received regarding intimidation.

{¶13} Following the state's case, Serrano moved for a Crim.R. 29 acquittal on Counts 2, 3, and 7. After a concession by the state, the trial court only granted Serrano's Crim.R. 29 acquittal on Count 2, discharging a firearm on or near prohibited premises.

{¶14} Serrano testified in his defense. He stated that he had known Wilson for over 30 years. He agreed with Wilson that they were friends until a July 4, 2013 altercation at Serrano's home, where Wilson disrespected Serrano's mother and Wilson was told to leave. Instead of leaving, Wilson attempted to punch Serrano, which caused Serrano to fight back and, as a result, Wilson was injured. However, Serrano denied stepping on Wilson's bike or brandishing a weapon during or after the altercation. Serrano admitted that the police came to his home after Wilson made a report and searched the premises and his brother's truck, but said the police did not discover anything.

{¶15} Serrano further denied any involvement with the incident that occurred on May 22, 2014. He denied seeing Wilson, pulling a gun on Wilson, or firing a weapon at Wilson. He did not know that a warrant was issued for his arrest on the charge of felonious assault until he went to the police station to recover his brother's truck that had been impounded.

{¶16} Serrano testified that he did not know that a no-contact order was in place until he came to court for the pending charges and was advised by the court. He denied ever violating the no-contact order. Specifically, he denied threatening Wilson in June, threatening Wilson with a knife, or trying to strike Wilson with his car.

**{¶17}** On cross-examination, Serrano admitted that his brother owned the truck involved, and that the truck and the other vehicles he had access to were registered to the address where Serrano lived. He further admitted that the disagreement in July 2013 was initially over drugs. Also on cross-examination, Serrano denied ever owning or using a gun — "never owned a gun in my life" (tr. 339); "never used a gun in my life." (Tr. 339.)

**{¶18}** These responses prompted the state to request a sidebar with the court. After a sidebar discussion about Serrano's 1992 conviction for felonious assault with a firearm and over defense counsel's doubt to admissibility, the state then proceeded to question Serrano about this stale conviction. Serrano did not deny the conviction, but denied the characterization of the conviction. He explained he had been accused of being involved in a shooting and, although he pled guilty to felonious assault with a weapon, he never used a weapon; he "just copped to [the charge]." (Tr. 346.)

**{¶19}** The trial court denied Serrano's renewed Crim.R. 29 motion for acquittal. The jury found Serrano guilty of felonious assault with both one- and three-year firearm specifications, and the court found Serrano guilty of the attendant notice of prior conviction and repeat violent offender specifications. The jury also returned guilty verdicts on Count 3, carrying a concealed weapon, Count 4, improperly handling a firearm in a motor vehicle, and Count 7, intimidation of a crime victim or witness. The court found Serrano guilty of Counts 5 and 6, having a weapon while under disability.

**{¶20}** Serrano was sentenced to a total prison term of six years — three years on the firearm specification in Count 1 to be served consecutive and prior to three years on the underlying felonious assault charge. After merging Counts 3, 5, and 6, the state elected that Serrano be sentenced on Count 5. The trial court imposed a one-year sentence on Counts 4, 5, and 7 to run concurrent with each other and to the six-year sentence imposed on Count 1.

**{¶21}** Serrano appeals, raising five assignments of error, which will be addressed out of order.

### Improper Character Evidence

**{¶22}** Serrano testified in his defense. During cross-examination, the state questioned him about any prior gun ownership or use. Serrano denied ever owning a gun or using a gun. Later in the trial at sidebar, the state indicated to the court that it wanted to question Serrano further about his denial of owning or using a firearm. Specifically, the state wanted to "impeach" Serrano by asking him about a 1992 conviction for felonious assault, which involved a firearm. Defense counsel interjected and questioned whether the prior conviction could be used in this circumstance because he did not know the factual basis behind the conviction. Nevertheless, the court allowed the state to question Serrano about the 1992 conviction "since it directly contradicts his testimony." (Tr. 345.)

**{¶23}** In his first assignment of error, Serrano contends that he was denied his right to a fair trial by the introduction of his prior 1992 conviction for felonious assault

with a weapon because it was improper character evidence. The state contends, however, that Serrano opened the door, allowing the state to impeach him about his use of guns, or in the alternative, the state used his prior conviction to impeach him under Evid.R. 609(A)(2) or 616(C).

{¶24} We find that defense counsel's interjection and questioning of the use of the conviction preserved the argument for appeal. Therefore, this assignment of error will be reviewed for an abuse of discretion. A trial court has broad discretion concerning the admission of evidence; in the absence of an abuse of discretion that materially prejudices a defendant, a reviewing court generally will not reverse an evidentiary ruling. *State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, 963 N.E.2d 162, ¶ 25 (10th Dist.), citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). A trial court abuses its discretion when its judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶25} On appeal, Serrano contends that the trial court abused its discretion in allowing the state to question him on the 1992 felonious assault conviction because he did not put his character at issue during his direct testimony, thus violating Evid.R. 404. The state argues that Serrano opened the door, allowing the state to impeach him because

during his direct testimony it was implied that he never owned or used a gun. The state contends this implication arose when Serrano denied Wilson's accusations and testified that the police did not recover a gun after the July 4, 2013 altercation. According to the state, Serrano's answers during direct allowed it to inquire further about Serrano's use and ownership of guns. We disagree.

**{¶26}** Although evidence about a person's character is generally inadmissible, "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible." Evid.R. 404(A)(1). In other words, a court will not find error "when the defense opens the door to otherwise inadmissible evidence." *State v. Davis*, 195 Ohio App.3d 123, 2011-Ohio-2387, 958 N.E.2d 1260, ¶ 26 (8th Dist.).

**{¶27}** Contrary to the state's assertion, Serrano did not "open the door." At no time did he put his character at issue during direct examination that would have allowed the state to question him about a prior stale conviction. Serrano did not provide any evidence of a "pertinent trait of character" that the state could attempt to rebut with questions about his prior conviction. Therefore, the testimony was not admissible under Evid.R. 404(A).

**{¶28}** Although not admissible under Evid.R. 404(A), the state contends that the use of the prior conviction was for impeachment purposes, not as substantive character evidence. Therefore, the state contends that the 1992 prior felonious assault conviction was admissible under Evid.R. 609 or 616(C).

**{¶29}** Evid.R. 609 governs the impeachment of a witness's credibility through the admission of evidence pertaining to a prior criminal conviction. The rule provides, in relevant part:

> (A) General Rule. For the purposes of attacking the credibility of a witness:

> (2) * * * [E]vidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

**{¶30}** However, evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the latter of the date of conviction or completion of sentence. Evid.R. 609(B). There is an exception to this ten-year exclusion rule — the trial court must determine, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect, and the proponent gives the adverse party written notice of its intent to use the evidence. *Id. See also State v. Triplett*, 8th Dist. Cuyahoga No. 97522, 2012-Ohio-3804, ¶ 38, citing *State v. Shepherd*, 8th Dist. Cuyahoga No. 81926, 2003-Ohio-3356, ¶ 23 (if a conviction is more than ten years old, Evid.R. 609(B) requires a trial court to set forth "specific facts" on the record that reflect the facts and circumstances justifying the admission of the "stale" conviction).

**{¶31}** In this case, Serrano was convicted in 1992 of felonious assault with use of a firearm. The state concedes on appeal that Serrano's conviction is outside the time frame and would not normally be admissible. However, the state contends the prior conviction was admissible because it was used "to impeach" Serrano while he was on the witness stand and not as substantive evidence.

**{¶32}** As noted by this court and other appellate districts,

> "[Evidence] Rule 609 applies only when a prior conviction is offered to impeach a witness by showing character for untruthfulness. If the evidence is offered under an impeachment theory other than character, Rule 609 does not apply. Similarly, if evidence of prior conviction is offered for reasons other than impeachment, Rule 609 does not apply. 1 Giannelli & Snyder, Evidence (2007) 458, Section 609.3.
>
> Evidence of an accused's prior conviction may be admitted to prove such things as an element of an offense; a witness'[s] bias; or motive, opportunity, or intent, as set forth in Evid.R. 404(B). *Id*. Evidence of a prior conviction may also be admitted for purposes of rebuttal. *Id*. at 459. When evidence of a prior conviction is admitted for these purposes, the requirements of Evid.R. 609 do not apply. *See id*. at 458-459.

*State v. Herron*, 8th Dist. Cuyahoga No. 99110, 2013-Ohio-3139, ¶ 19, quoting *State v. Kraus*, 12th Dist. Warren No. CA2006-10-114, 2007-Ohio-6027, ¶ 74-75; *see also State v. Shearer*, 11th Dist. Lake No. 2011-L-007, 2011-Ohio-6835, ¶ 35. Furthermore, evidence of prior convictions is always admissible to show perjured testimony of the defendant regarding the existence or nature of prior convictions. *United States v. Babbit*, 683 F.2d 21, 25 (1st Cir.1982).

**{¶33}** Evid.R. 609 is used to impeach a defendant's credibility in general. *State v. Eldridge*, 12th Dist. Brown No. CA2002-10-021, 2003-Ohio-7002, ¶ 50. Therefore,

Evid.R. 609 was not intended to apply where evidence of a prior conviction is offered to rebut specific statements of a defendant who testifies at trial. *Dixon v. Barrett*, E.D. Mich. No. 2:11-CV-10816, 2012 U.S. Dist. LEXIS 188128 (Nov. 21, 2012), citing *People v. Taylor*, 422 Mich. 407, 373 N.W.2d 579 (1985) (analyzing comparable Mich. Evid.R. 609), *see also United States v. Johnson*, 542 F.2d 230, 234-235 (5th Cir.1976) (analyzing comparable Fed.R.Evid. 609).

{¶34} In *State v. Billings*, 103 Ohio App.3d 343, 346, 659 N.E.2d 799 (8th Dist.1995), this court affirmed the admission of an otherwise inadmissible misdemeanor conviction under Evid.R. 609, reasoning that it was admitted "not to impeach the defendant's credibility by showing conviction of a misdemeanor, but rather to demonstrate the defendant was not truthful about a specific incident involving the domestic violence issue." *Id.* at 346

{¶35} In this case and like *Billings*, the trial court did not allow the state to question Serrano on his prior conviction in contravention of Evid.R. 609; thus Evid.R. 609 does not apply. Instead, the court expressly permitted the questioning on the impeachment theory of contradiction — the state was rebutting Serrano's claim that he never owned or used a gun in his life. Therefore, because the trial court allowed the prior conviction for reasons other than character, the time limitations and other restrictions under Evid.R. 609 do not apply. *Shearer* at ¶ 37 (since the entire rule only refers to impeachment of a witness's credibility, division (B) cannot be invoked when the introduction of the prior conviction evidence is for another purpose).

{¶36} There are two methods of impeachment by contradiction — self contradiction under Evid.R. 613 and specific contradiction pursuant to Evid.R. 616. Pursuant to Evid.R. 613(C), prior inconsistent conduct, the rule allows that "[d]uring examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach." Under Evid.R. 616(C), specific contradiction, "facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony." Under both of these rules, limitations exist on the use of extrinsic evidence when the facts or conduct are offered solely for impeaching a witness's testimony.

{¶37} In this case, because Serrano was testifying on the witness stand during cross-examination when the state questioned him about the prior conviction, extrinsic evidence was not used. Furthermore, whether the state's questioning was on a material or collateral matter is of no consequence. "The common law rule does not prohibit a party from cross-examining on a 'collateral matter.'" Staff Notes to Evid.R. 616.

{¶38} We find the trial court did not abuse its discretion when it allowed the state to rebut Serrano's prior testimony with the use of his prior conviction. The 1992 conviction of felonious assault with a firearm contradicted Serrano's prior testimony that he never used a firearm. This contradiction was admissible under either Evid.R. 613(C) or 616(C). As the state correctly pointed out, had Serrano admitted he had used a gun in the past, his prior conviction would not have been admissible, and the state would have been precluded from any further inquiry about the facts surrounding the prior gun use.

However, because he denied ever using a gun, the state was able to use an otherwise inadmissible prior conviction to impeach a specific aspect of Serrano's testimony.

{¶39} Accordingly, the trial court did not abuse its discretion in allowing the state to question Serrano about his 1992 felonious assault conviction. Serrano's first assignment of error is overruled.

Sufficiency of the Evidence

{¶40} In his third assignment of error, Serrano contends that insufficient evidence was presented to support his conviction for intimidation of a victim in a criminal case as charged in Count 7.

{¶41} A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶42} In this case, Serrano only makes a sufficiency challenge to his conviction for intimidation of a victim in a criminal case, in violation of R.C. 2921.04(B)(1). Serrano

contends that no evidence was presented that he used force or an unlawful threat of harm to intimidate Wilson on June 5, 2014. Specifically, he argues that Wilson only testified that he felt harassed.

{¶43} R.C. 2921.04(B)(1) provides, in relevant part, that "[n]o person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense * * * against any person, shall attempt to influence, intimidate, or hinder * * * the victim of a crime * * * in the filing or prosecution of criminal charges." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶44} At the outset, we note that R.C. 2921.04(B) requires only an attempt to influence, intimidate, or hinder. "[T]he defendant need only try to create fear about or try to influence or hinder the filing or prosecution of criminal charges." *State v. Thompson*, 7th Dist. Columbiana No. 13 CO 20, 2014-Ohio-1225, ¶ 16, citing R.C. 2921.04(B). There is no requirement that the victim actually feel intimidated. *Thompson* at *id.*, citing *State v. Williams*, 8th Dist. Cuyahoga No. 94261, 2011-Ohio-591, ¶ 14 ("[n]othing in the statute requires the victim to even know that the defendant attempted to intimidate the witness").

{¶45} Accordingly, the state was only required to show that on or about June 5, 2014, Serrano knowingly by force or unlawful threat of harm to the victim or by unlawful

threat to commit any offense to the victim, attempted to influence, intimidate, or hinder Wilson, not that he actually achieved that result.

**{¶46}** We agree with Serrano that no evidence was presented that Serrano used force in an attempt to intimidate or influence Wilson in the prosecution of criminal charges. However, Serrano could be found guilty of intimidation by making an "unlawful threat of harm" or "unlawful threat to commit any offense" to the victim. The Ohio Supreme Court has held that an "unlawful threat" must be "more than just a threat, i.e., more than just a communication to a person that particular negative consequences will follow should the person not act as the communicator demands." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 41. Therefore, "the statutory language in R.C. 2921.04(B), proscribing intimidation by an 'unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." *Id*. at ¶ 42.

**{¶47}** In this case, Wilson testified that on June 5, 2014, Serrano repeatedly rode his motorcycle past Wilson's home, stopped in front of it while Wilson was outside, pointed at him, and said things to others about Wilson filing charges against him. According to Wilson, he felt threatened and harassed because Serrano was not supposed to be on his street due to a no-contact order that Wilson obtained against Serrano after the July 4, 2013 assault.

**{¶48}** Serrano's disregard for the no-contact order would be a violation of criminal law; thus, Serrano's imposing presence and gestures were sufficient to prove that he made

"unlawful threats of harm" to Wilson in an attempt to hinder or intimidate Wilson in prosecuting the case. Therefore, sufficient evidence existed to support Serrano's conviction for intimidation of a crime victim in violation of R.C. 2921.04(B).

{¶49} Accordingly, Serrano's third assignment of error is overruled.

Manifest Weight of the Evidence

{¶50} In his fourth assignment of error, Serrano contends that his convictions were against the manifest weight of the evidence.

{¶51} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶52} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe

their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶53}** In this case, Serrano challenges the manifest weight of his convictions by contending that the evidence regarding the identity of the shooter was conflicting and inconsistent. Specifically, Serrano contends that Russo identified the shooter as a black male (Serrano is Hispanic), Wilson identified the shooter as "Raymond Ramos" during his 911 call, and there was no evidence linking Serrano to the truck that was identified as used in the shooting.

**{¶54}** Russo testified that the shooter was a black male. However, Russo also testified that the shooter had some facial hair and was wearing a baseball cap. She further stated that she could not see too much of his skin, only the skin on his hand because she was staring at his eyes. Serrano admitted that he previously had a beard, but that it was not thick or covered his entire face. While Russo's description may be inconsistent with Serrano's race, Detective Kubas testified that in his opinion, Serrano at a distance is darker complected and could be mistaken as a black male. The jury was in the best position to view Serrano during this testimony and make their own reasonable conclusions regarding Russo's description, and take note of any inconsistencies.

**{¶55}** Wilson's misstatement of Serrano's name does not warrant reversal. Although Wilson told dispatch that the person who shot at him was "Raymond Ramos," Wilson testified that he had known Serrano for over 30 years and was 100 percent positive that Serrano was the person who shot at him. Wilson's misstatement to dispatch could have been attributed to the duress of the situation, a factor the jury could have reasonably considered.

**{¶56}** Finally, the lack of physical evidence linking Serrano to the truck used in the shooting does not warrant reversal under a manifest weight standard. The jury heard from both Russo and Wilson, whose testimonies were consistent in the description of the truck that was involved in the shooting. The truck was registered to Serrano's brother at the address where Serrano lived. Furthermore, the jury heard that Serrano, rather than his brother, went to the police station to recover the truck. Russo also testified that the shooter who exited the truck was wearing a jacket with an "R" name on it. Finally, Wilson testified and identified Serrano as the shooter who emerged from the truck and fired the weapon in his direction.

**{¶57}** Any conflict or inconsistencies in the testimony or evidence regarding the identity of the shooter were before the jury and we cannot say that the jury lost its way and created such a manifest miscarriage of justice that convictions involving the shooting incident on May 22, 2014 must be reversed and a new trial ordered.

**{¶58}** Serrano also contends that his conviction for intimidation was against the manifest weight of the evidence because there was no evidence that he used force or

threatened Wilson. As explained previously under Serrano's third assignment of error, Wilson testified that he felt threatened and harassed. Furthermore, Wilson did not have to actually feel threatened, just that Serrano attempted to intimidate him. Serrano's conviction for intimidation is not against the manifest weight of the evidence because it can be concluded that Serrano's presence on Wilson's street in front of his home making gestures toward him was an attempt to intimidate him.

{¶59} Accordingly, Serrano's assignment of error is overruled.

Effective Assistance of Counsel

{¶60} Serrano contends in his second assignment of error that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the U.S. Constitution.

{¶61} To establish ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonable representation and (2) that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶62} The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d

378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland* at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." *Strickland* at *id*.

{¶63} In this case, Serrano contends that counsel was ineffective for failing to object to the state's introduction of his 1992 felonious assault conviction. As previously discussed in addressing his first assignment of error, defense counsel's interjection and questioning at sidebar was sufficient to preserve the objection on appeal. Accordingly, Serrano's challenge is without merit.

{¶64} He further contends that his counsel was ineffective for failing to object to the state's closing argument when it commented on Serrano's prior conviction and told the jury that Russo actually saw Serrano shoot Wilson, which was commenting on evidence not presented or introduced.

{¶65} Prosecutors are generally "entitled to considerable latitude in opening and closing arguments." (Citations omitted.) *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293, ¶ 12. "A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom." *Id.*, citing *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). Prosecutors may also fairly comment on the credibility of witnesses based on the witnesses' testimony at trial. *State v. Williams*, 8th Dist. Cuyahoga No. 90739,

2012-Ohio-1741, ¶ 12. In that regard, courts must review the prosecutor's statement within the context of the entire trial, rather than take the comments out of context and give them their most damaging meaning. *Id*., citing *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996).

{¶66} During closing, the state reminded the jury of Serrano's prior conviction for felonious assault, indicating that he lied to them.

> Then we get to the defendant on the stand, telling you, no, I don't own guns. Never used a gun. Never had one.
>
> This is how we know he's not credible. He lied to you on the stand. In 1992 he pled guilty to firing a gun and injuring someone, felonious assault with a gun.
>
> Now, we're not using that — I don't want you to say because he's done this before, he did it in this case. That's not why we're using it. That's to show he's not credible. You can't believe him. He lied to you. He got up in court and lied to you, I've never used a gun. But he's pled guilty to it."

(Tr. 385-386.)

{¶67} Counsel was not ineffective for failing to object to the state's comment about Serrano's prior conviction during closing argument. As previously explained in addressing Serrano's first assignment of error, the state's questioning on Serrano's prior conviction was proper impeachment evidence through the use of contradiction. Therefore, the jury already heard through Serrano's testimony that he was convicted in 1992 for felonious assault. The jury also heard Serrano's explanation surrounding the circumstances of the case and that he "copped out" to the charge. Here, when reviewing the state's closing argument as a whole, the state was asking the jury to consider the

character of the witnesses, based upon all of the witnesses' testimony at trial, in order to determine their credibility.

{¶68} Moreover, the state in its closing cautioned the jury not to consider the conviction as substantive evidence, but rather as evidence that he was untruthful during his testimony. Based on this cautionary instruction by the state, we cannot say that counsel's failure to object to the state's reference fell below an objective standard of reasonable representation.

{¶69} Serrano also contends that counsel was ineffective for failing to object to the state's comments that the eyewitness actually saw Serrano shoot Wilson, which was commenting on evidence not presented or introduced. Contrary to Serrano's argument, the state did not tell the jury that Russo identified Serrano as the shooter, but only that Russo's observations and testimony about the shooting corroborated Wilson's testimony about the shooting and shooter. Based on the corroboration, the state's comment that Russo saw Serrano shoot at Wilson is a reasonable inference that could be drawn from the evidence presented. Therefore, counsel was not ineffective for failing to object during the state's closing.

{¶70} Finally, Serrano contends that the cumulative effect of counsel's errors denied him a fair trial. Having found no error, Serrano's cumulative effect argument must logically fail. Accordingly, Serrano's second assignment of error is overruled.

Cumulative Effect of Errors

**{¶71}** In his fifth assignment of error, Serrano contends that he was deprived of his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled as harmless.

**{¶72}** The courts recognize that a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. In order to find cumulative error, we must find: (1) that multiple errors were committed at trial, and (2) there is a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. *State v. Viceroy*, 8th Dist. Cuyahoga No. 97031, 2012-Ohio-2494, ¶ 21, citing *State v. Clark*, 8th Dist. Cuyahoga No. 89371, 2008-Ohio-1404, ¶ 62. In this case, having found no reversible errors, we summarily overrule this assignment of error.

**{¶73}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR